816 So.2d 9 (2001)
ALLIED-BRUCE TERMINIX COMPANIES, INC., d/b/a Terminix Service; and Billy Murphy
v.
Richard BUTLER and Hiltrud Butler.
Robert E. Ritz and Wendy Jean Ritz
v.
Richard Butler and Hiltrud Butler.
1000758 and 1000809.
Supreme Court of Alabama.
October 5, 2001.
*11 T. Julian Motes and Michael E. Gabel of Sirote & Permutt, P.C., Mobile; and Edward M. Price, Jr., and Joel W. Weatherford of Farmer, Price, Hornsby & Weatherford, Dothan, for appellants Allied-Bruce Terminix Companies, Inc., d/b/a Terminix Service, and Billy Murphy.
William L. Lee III and William W. Nichols of Lee & McInish Attorneys, P.C., Dothan, for appellants Robert E. Ritz and Wendy Jean Ritz.
Stephen T. Etheredge of Buntin, Etheredge & Dowling, L.L.C., Dothan, for appellees Richard Butler and Hiltrud Butler.
HOUSTON, Justice.
This is an appeal from orders of the Circuit Court of Houston County, denying motions to compel arbitration.
The plaintiffs Richard and Hiltrud Butler signed a real-estate purchase agreement in which they agreed to purchase a house from the defendants Robert Ritz and Wendy Ritz. The agreement contained the following provision:
"Purchasers and sellers expressly agree that any dispute relating to this agreement[,] to any breach thereof, to the relationship created by this agreement, or to the payment of fees, shall be settled by arbitration. The parties hereto agree that this agreement substantially involves interstate commerce."
The purchase was consummated, and the Butlers paid the Ritzes $168,500 for the house in Enterprise. Both the Ritzes and the Butlers are residents of Alabama. In the purchase agreement, the Ritzes committed to convey the property to the Butlers "by Warranty Deed free and clear of all encumbrances," and they did so. In order to do this, $155,423.40 of the purchase price was paid to Norwest Bank in Des Moines, Iowa, to pay off the Ritzes' existing mortgage. At the closing, to fulfill the provisions of the purchase agreement, the closing attorney paid other sums of money to out-of-state corporations $389 to Aon Home Warranty in Chicago, Illinois, for a one-year home warranty, and $92.88 to Commonwealth Land Title, National Processing Center, in Louisville, Kentucky, for title insurance.
The Butlers sued the Ritzes, alleging misrepresentation and suppression involving the house that they had purchased from the Ritzes. They also named as defendants Allied-Bruce Terminix Companies, Inc., d/b/a Terminix Service ("Terminix Service"), and Terminix Service's employee, Billy Murphy. They asserted claims against Terminix Service alleging breach of contract, fraud, suppression, and negligence arising from Terminix Service's issuance of an Alabama Official Wood Destroying Organism Infestation Report ("termite certification letter") and claims against Murphy of fraud and suppression. The Ritzes and Terminix Service and Murphy moved to stay the proceedings and to compel arbitration, based on the arbitration provision in the real estate purchase agreement. The trial court had before it this motion and the affidavit of the closing attorney setting out how the funds involved in the sale had been disbursed, when it denied the motions to compel arbitration.
This Court's review of a trial court's order refusing to compel arbitration *12 is de novo. Patrick Home Ctr., Inc. v. Karr, 730 So.2d 1171 (Ala.1999).
There was proof that the transaction had a substantial effect on interstate commerce; such proof is required before an arbitration provision can be enforced in Alabama. Sisters of Visitation v. Cochran Plastering Co., 775 So.2d 759 (Ala.2000). Ninety-two percent of the purchase price paid for the house was sent to a bank in Iowa to clear the encumbrance on the property to enable the Ritzes to convey the property to the Butlers free of any encumbrances, as the purchase agreement required. That is a substantial effect on interstate commerce. See Thompson v. Skipper Real Estate Co., 729 So.2d 287 (Ala.1999).
Once it is determined that the transaction has a substantial effect on interstate commerce, the arbitration provision must then be examined to determine whether the parties agreed to arbitrate the dispute involved. Carl Gregory Chrysler-Plymouth, Inc. v. Barnes, 700 So.2d 1358 (Ala.1997). The arbitration provision in this case provides that "any dispute relating to [the purchase] agreement [or] to any breach thereof," and any dispute relating to "the relationship created by [the purchase] agreement ... shall be settled by arbitration."
The basis of the Butlers' action against the Ritzes is the alleged misrepresentation as to, or concealment of, the condition of the house the Butlers bought from the Ritzes. The essence of the purchase agreement, which includes the arbitration provision, was the sale of this house. Any obligation of the Ritzes to speak the truth to the Butlers about this house arose from the purchase agreement. Therefore, this action related to the relationship created by the purchase agreement and to an alleged breach of that agreement.
The trial court erred in refusing to compel arbitration of the Butlers' claims against the Ritzes.
In Allied-Bruce Terminix Cos. v. Dobson, 628 So.2d 354 (Ala.1993), this Court affirmed the denial of a motion to compel arbitration. The United States Supreme Court, in a 7-2 opinion, reversed our judgment. Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). The parties in Dobson did not dispute that the transaction, in fact, involved interstate commerce; however, the United States Supreme Court recognized the following as interstate activities in that transaction: "Allied-Bruce, like Terminix, is a multistate firm and shipped treatment and repair material from out of state." 513 U.S. at 269, 115 S.Ct. 834. The undisputed evidence before the trial court at the time it denied Terminix Service's motion to compel arbitration was as follows:
"Terminix Service is a corporation organized under the laws of the State of Arkansas with offices located in the States of Florida, Georgia, Alabama, Mississippi, Louisiana, Arkansas, Oklahoma, and Texas.... Most of the materials and equipment used to treat [the house that the Ritzes sold to the Butlers], were purchased outside the State of Alabama and transferred to the State of Alabama for use on the home involved in this suit."
(Affidavit of W. Bruce Alverson, senior vice president for Terminix Service.) (Emphasis added.) This evidence indicates that the service performed by Terminix Service had a substantial effect on interstate commerce. Allied-Bruce Terminix Cos., Inc. v. Dobson, supra.
The purchase agreement provided:

*13 "2. TERMITE CERTIFICATION: [The Ritzes] agree[] to pay for termite certification from a state licensed and bonded operator, stating that a visual inspection of accessible areas INDICATES THE DWELLING is free and clear of any active infestation by wood destroying insects or fungus and any damage caused by active infestation and structural damages therefrom. THIS IS NOT A STRUCTURAL DAMAGE REPORT NOR A WARRANTY AS TO THE ABSENCE OF WOOD DESTROYING INSECTS. Should a wood destroying insect inspection report disclose damage or infestation, Seller(s) shall immediately treat and repair the same, not to exceed a cost deemed reasonable to Seller(s) or as agreed to in writing by the Seller(s) and Purchaser(s) or, if more, then Seller(s) may terminate this contract unless Purchaser(s) agrees to pay the difference or accept, with mortgage company approval, the property so damaged plus the said repair money."
Terminix Service was selected to perform these essential provisions of the purchase agreement, and the termite certification letter Terminix Service gave the Butlers is the basis for the Butlers' breach-of-contract claim, their fraudulent-misrepresentation claim, their suppression claim, and their negligence claim against Terminix Service. The termite certification letter is also the basis for the Butlers' fraudulent-misrepresentation and suppression claims against Murphy.
Neither Terminix Service nor Murphy are parties or signatories to the purchase agreement. Therefore, for the Butlers to be required to arbitrate their claims against Terminix Service or Murphy, the Butlers must be equitably estopped from asserting that Terminix Service and Murphy cannot enforce an arbitration agreement, or Terminix Service and Murphy must be third-party beneficiaries to the purchase agreement between the Ritzes and the Butlers. Ex parte Stamey, 776 So.2d 85, 89 (Ala.2000).
For Terminix Service or Murphy to be able to enforce the arbitration agreement as third-party beneficiaries, they "must establish that the contracting parties intended, upon execution of the contract, to bestow a direct, as opposed to an incidental, benefit upon the third party." Weathers Auto Glass, Inc. v. Alfa Mut. Ins. Co., 619 So.2d 1328, 1329 (Ala.1993) (quoted in Ex parte Dyess, 709 So.2d 447, 450 (Ala.1997), and in Stamey, 776 So.2d at 92). After examining the entire purchase agreement, which this Court must do to determine whether the Butlers and the Ritzes intended to bestow on Terminix Service or Murphy a direct benefit from that agreement (Stamey 776 So.2d at 92), this Court cannot conclude that the Butlers and the Ritzes intended for Terminix Service or Murphy to receive a direct benefit from the purchase agreement. Therefore, Terminix Service and Murphy cannot enforce the arbitration agreement as third-party beneficiaries.
In determining whether the Butlers are equitably estopped from asserting that a nonparty to the purchase agreement cannot enforce arbitration, the arbitration provision itself must indicate that the party resisting arbitration "has assented to the submission of claims against nonparties claims that would otherwise fall within the scope of the arbitration provision to arbitration." Stamey, 776 So.2d at 89.
If the scope of the arbitration agreement signed by the Butlers is broad enough to encompass those claims the Butlers make against Terminix Service and Murphy and the description of the parties subject to the arbitration agreement is not *14 so restrictive as to preclude arbitration by Terminix Service and Murphy, then the Butlers are equitably estopped from asserting that the arbitration agreement cannot be enforced by Terminix Service and Murphy. Stamey, 776 So.2d at 89; Ex parte Napier, 723 So.2d 49, 53 (Ala.1998). The arbitration provision provides that "any dispute relating to this agreement[,] to any breach thereof, or to the relationship created by this agreement ... shall be settled by arbitration." It is not limited to claims between the Butlers and the Ritzes, as was the arbitration provision in those cases cited in Stamey, 776 So.2d at 90, which "applied the rule that if the arbitration provision is specifically limited to claims that arise between the parties to the contract, then any nonparties will not be able to enforce the arbitration agreement." The Butlers' claims against Terminix Service and Murphy relate to a breach of the purchase agreement, and the purchase agreement establishes the relationship between the Butlers and Terminix Service and Murphy, which permits the Butlers to file these claims against Terminix Service and Murphy. Therefore, the Butlers are equitably estopped from asserting that the arbitration provision in the purchase agreement cannot be enforced by Terminix Service and Murphy.
The trial court erred in refusing to compel arbitration of the Butlers' action against Terminix Service and Murphy.
Because the trial court erred in denying the motions to compel arbitration filed by the Ritzes and Terminix Service and Murphy, its judgment is reversed and the cause is remanded for an order or proceedings consistent with this opinion.
REVERSED AND REMANDED.
BROWN and STUART, JJ., concur.
HARWOOD, J., concurs specially.
SEE and LYONS, JJ., concur in the result.
MOORE, C.J., and JOHNSTONE and WOODALL, JJ., dissent.
HARWOOD, Justice (concurring specially).
On June 16, 1992, Terminix Service issued its Termite Protection Plan (hereinafter "the Plan") to Robert E. Ritz with respect to the residence involved in this litigation. On May 29, 1999, Mr. and Mrs. Ritz, as sellers, entered into a "Real Estate Purchase Agreement" with Mr. and Mrs. Butler, as purchasers (hereinafter "the Agreement"). As provided in the "Termite Certification" clause of the Agreement (set forth in full in the main opinion), the sellers agreed to pay for a "termite certification" from a state-licensed and state-bonded pest-control service certifying, as one alternative, that a visual inspection indicated that the dwelling was free and clear of any active termite infestation and of any damage caused by an active infestation. Also, in addition to the arbitration provision and other clauses set forth in the main opinion, the Agreement contained as an "additional provision" the requirement that "if seller has a termite bond on the house, that bond is to be transferred to purchaser at closing, if possible."
Terminix Service was engaged to perform the visual inspection and to issue the termite certification. The record contains an affidavit by the loan-closing attorney, establishing that he disbursed out of the loan proceeds the sum of $75 to Terminix Service, subtracting that amount from the gross sale proceeds due the Ritzes as the sellers. Although the Butlers aver in their complaint that they "contracted with Terminix Services, Inc., for the performance of an inspection ... for the issuance by Terminix Services, Inc., of an Official Alabama *15 Wood Infestation Inspection Report," that averment is clearly contradicted by the record, which shows that the contract for the inspection and for issuance of a report was solely between the Ritzes and Terminix Service. Consequently, on June 28, 1999, Terminix Service issued to "Seller, Robert Ritz" its "Official Alabama Wood Infestation Inspection Report" (hereinafter "the Report"), stating that an inspection had not revealed visible evidence of any active infestation, but that it had revealed evidence of previous infestation in a couple of areas. The Report further stated that Terminix Service had treated the residence on January 16, 1992, for subterranean termites and that, with respect to the visible evidence of previous infestation, "proper measures were taken care of." The Butlers were provided a copy of the Report at the loan closing conducted on June 29, 1999.
The complaint the Butlers filed against Terminix Service and the Ritzes and Terminix employee Billy Murphy contains six counts, asserting the following claims against the following defendants:
Count I asserts breach of contract against Terminix Service with respect to the Report.
Count II charges Terminix Service with fraud by misrepresentation, with respect to the information contained in the Report.
Count III charges Terminix Service with fraudulent suppression, with respect to information it allegedly had that the Butlers say was contrary to the representations of the Report.
Count IV charges Terminix Service with negligence, in that it breached its "duty to use reasonable care and competence in conducting the inspection and in issuing" the Report.
Count V charges "fraudulent misrepresentation and suppression" against the Ritzes, based on their alleged misrepresentations to, and concealment from, the Butlers of various information concerning the true condition of the house.
Count VI charges "fraudulent misrepresentation and suppression," against Murphy with respect to facts he allegedly knew but either misrepresented or concealed.
Finally, Count VI charges that the Ritzes, Terminix Service and Murphy "combined and concurred in their actions, misrepresentations and in the suppression of material facts to proximately induce the action of plaintiffs...." The concluding paragraph of that count requests an award of punitive damages "in an amount which would adequately reflect the enormity of the joint, combined and concurring wrongs" of the parties. (Emphasis supplied.)
Terminix Service established by affidavit filed with the trial court that it is an Arkansas corporation with offices not only in that state, but also in Alabama, Florida, Georgia, Louisiana, Mississippi, Oklahoma, and Texas; and that "[m]ost of the materials and equipment [Terminix Service] used to treat the home involved in this suit ..., including specifically the chemicals used to treat the home, was purchased outside the State of Alabama and transferred to the State of Alabama for use on the home involved in this suit." Compare Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 282, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) ("The parties do not contest that the transaction in this case, in fact, involved interstate commerce. In addition to the multistate nature of Terminix and Allied-Bruce, the termite-treating and house-repairing material used by Allied-Bruce in its (allegedly inadequate) efforts to carry out the terms of the Plan, came from outside Alabama.")
*16 As noted, the Butlers assert only one direct claim against the Ritzesthat of fraudulent misrepresentation and suppression relating to the condition of the residence with regard to past damage from, and present infestations of, subterranean termites. The Butlers allege that because of the misrepresentations and suppression of material facts by the Ritzes, the Butlers were "induced to complete the purchase of the residence and enter into mortgage indebtedness relating to such purchase, [and] entered into an assumption of and/or continue renewing the Subterranean Termite Contract [the Plan] with Terminix." The concluding count of the complaint also charges that the Ritzes, along with Terminix Service and Murphy, "combined and concurred in the actions, misrepresentations and in the suppression of material facts" thereby inducing the same actions and reliance. Clearly, the gravamen of the Butlers' claims against the Ritzes falls within the scope of the arbitration clause of the Agreement, covering "any dispute relating to this agreement[,] to any breach thereof, to the relationship created by this agreement, or to the payment of fees...." The communications and discussions between the Butlers and the Ritzes concerning the condition of the residence and any duty the Ritzes might have had affirmatively to disclose information concerning past termite damage to the residence and present termite infestations necessarily related "to this agreement" and/or "to the relationship created by this agreement."
Did the transaction between the Butlers and the Ritzes have a substantial effect upon interstate commerce? As the main opinion states, the Agreement required that the Ritzes convey the property to the Butlers "by Warranty Deed free and clear of all encumbrances [and] liens." The loan closing paperwork, signed by both the Ritzes and the Butlers, reflected that $155,423.40 of the $168,500 sales price was paid to Norwest Mortgage, Inc., to "pay off first mortgage loan." Norwest Mortgage, Inc., was located in Des Moines, Iowa, and the loan payoff was transmitted interstate to it. As the main opinion notes, and pursuant to requirements of the Agreement, much smaller sums were paid to Commonwealth Land Title in Louisville, Kentucky, for a title examination and title insurance and to Aon Home Warranty in Chicago, Illinois, for a home warranty. Also, $75 was paid to Terminix Service for its inspection of the residence. In fact, after payment of those items, closing costs, and the real estate commission, the Ritzes' net proceeds were only $400.30. As the main opinion notes, the existing loan payoff to Norwest Mortgage accounted for 92% of the entire transaction. The main opinion concludes that this payoff, in and of itself, represented "a substantial effect on interstate commerce," following that statement with the citation, "See Thompson v. Skipper Real Estate Co., 729 So.2d 287 (Ala.1999)." 816 So.2d at 12.
While I agree that Thompson is pertinent, I do not agree that it is necessarily dispositive. First, Thompson was decided before this Court issued its opinion in Sisters of the Visitation v. Cochran Plastering Co., 775 So.2d 759 (Ala.2000). In Sisters of the Visitation, we required that the transactional effect on interstate commerce be proven to be "substantial." In Thompson, the Court expressly noted that it was operating under a standard whereby a transaction was deemed sufficiently to involve interstate commerce "if it has virtually any tangible effect on the generation of goods or services for interstate markets and their distribution to the consumer." 729 So.2d at 290. Also, in Thompson, the financing of the transaction by an out-of-state corporation (along with the obtaining of title insurance and homeowner's insurance from out-of-state corporations) was *17 considered to "constitute a sufficient nexus" with interstate commerce. In the present case, the lending institution financing the transaction is an Alabama corporation; it is the fact that the loan made by the preexisting lender, Norwest of Des Moines, Iowa, was paid off in the transaction, that the main opinion deems pivotal. Because that loan payoff was required by the Agreement as an essential feature of the transaction, and its amount was so great, I agree that it, along with the other more modest interstate payments, served to establish a substantial effect on interstate commerce.
I do not believe that the "doctrine of merger" applied in Swanson v. Green, 572 So.2d 1246 (Ala.1990), upon which Justice Woodall relies in his dissent, is applicable in this case. Swanson explained that the doctrine of merger "holds that, absent fraud or mistake, when a contract to sell or convey land is consummated by execution and delivery of a deed, that contract becomes `functus officio' and the deed becomes the sole memorial of the parties' agreement." 572 So.2d at 1248 (emphasis supplied). A footnote to that statement notes that "[n]either side raised any claim of fraud in any of the pleadings." Id. In the present case, the only claims the Butlers assert against the Ritzes are those of fraudulent misrepresentation and suppression.
As to Terminix Service, a nonsignatory to the Agreement, the analysis of the scope of the arbitration clause is necessarily a little different. The various claims asserted against it, as earlier summarized, do not directly rely on either the Agreement or the Plan. Rather, the Butlers reference only the Report as the contract they claim Terminix Service breached, and out of which flowed the misrepresentations they allege Terminix Service made and the duties they claim Terminix Service owed them to disclose information and to use reasonable care and competence in conducting the inspection and issuing the report. As already discussed, however, the visual inspection and the resulting Report were required by the Termite Certification clause of the Agreement; without that contractual requirement there would have been no inspection, no Report, and none of the alleged misrepresentations, suppressions, and breaches of duty charged against Terminix Service. The Agreement imposed a duty on the Ritzes, not the Butlers, of paying for a termite certification from a state-licensed and bonded pest-control service stating that a visual inspection of the residence indicated it was free and clear of any active infestation, or damage caused by an active infestation. Consequently, as previously mentioned, the resulting Report is addressed to Mr. Ritz, as the owner of the residence inspected; the Butlers are nowhere mentioned in the Report. Therefore, the Butlers' claim against Terminix Service for a breach of that "contract" necessarily must be premised on their status as third-party beneficiaries to it.
This same legal analysis was applied by this Court in a very similar situation, albeit not one involving an issue of arbitration. In Rumford v. Valley Pest Control, Inc., 629 So.2d 623 (Ala.1993), the real estate purchase agreement for a residence required the sellers to procure and to pay for a letter stating that the property was free and clear of termite infestation and damage. The sellers, who had a preexisting service contract with a pest-control company, engaged that company to inspect the house and to issue the required letter, which the company did, and the letter was produced at the loan closing. Subsequently, the purchasers discovered termite infestation. They sued the sellers and the pest-control company, alleging various claims of fraud and breach of contract. *18 This Court agreed that the purchasers were due to be accorded the status of third-party beneficiaries to the contract between the sellers and the pest-control company, and reversed the summary judgment the trial court had entered in favor of the pest-control company.
In the present case, likewise, the contract providing for the inspection and the issuance of the Report was solely between Mr. Ritz and Terminix Service. Thus, the Butlers can maintain their claim against Terminix Service for breach of contract only by presenting themselves as third-party beneficiaries of the contract between Terminix Service and the Ritzes, and that contract relates back to the Agreement. The language of the arbitration provision in the Agreement is quite broad in scope, requiring arbitration of "any dispute" that happens to relate to the Agreement, to any breach of it, or to the relationship created by it. No limitation is imposed with respect to those persons or entities entitled to invoke that provision.
Although Terminix Service was not a signatory to the Agreement, under the circumstances of this case, particularly given the nature and description of the claims the Butlers have chosen to assert against the various defendants, Terminix Service is entitled to partake of the benefit of the arbitration provision under the equitable-estoppel exception. As this Court explained in Ex parte Stamey, 776 So.2d 85, 89 (Ala.2000), all that is required for that exception to apply is
"(1) that the scope of the arbitration agreement signed by the party resisting arbitration be broad enough to encompass those claims made by that party against nonsignatories, or that those claims be `intimately founded in and intertwined with' the claims made by the party resisting arbitration against an entity that is a party to the contract, and

(2) that the description of the parties subject to the arbitration agreement not be so restrictive as to preclude arbitration by the party seeking it."
In this case, the claims the Butlers make against Terminix Service, the nonsignatory to the Agreement, are "intimately founded in and intertwined with" the claims they make against the Ritzes, the signatories to the Agreement. In the "Factual Background to all Counts" section of their complaint, the Butlers describe an interweaving of common knowledge by Terminix Service and the Ritzes, and assert that the Ritzes knew that the information contained in the Report "and transmitted to the Plaintiffs in the Defendants' presence at closing was false, inadequate, and incomplete." As to both their fraud and suppression claims against Terminix Service and their fraudulent-misrepresentation and suppression claims against the Ritzes, the Butlers assert the same resulting damages: that they "were induced to complete the purchase of the residence and enter into the mortgage indebtedness relating to such purchase, [and] enter into an assumption of an/or continue renewing the Subterranean Termite Contract with Terminix." In both instances, the Butlers allege that "if they had known of the facts that were concealed by [the Ritzes and Terminix], [they] would not have otherwise completed the purchase of the residence, entered into a mortgage indebtedness relating to said purchase, assumed and/or renewed the Termite Contract with Terminix." As to the Ritzes, the Butlers allege in Count V that "the facts comprising their representations and those of Terminix [Service] made or communicated in their presence were material" and that the Ritzes had a duty to disclose the facts. Finally, in Count VI, their claim for "Combining and Concurring Actions," the Butlers assert that the Ritzes, Terminix, and Murphy *19 "combined and concurred in their actions, misrepresentations and in the suppression of material facts ...," and they claim punitive damages to "reflect the enormity of the joint, combining and concurring wrongs" of those parties.
In each count of their complaint preceding their final count asserting the theory of "combining and concurring actions," the Butlers use the pleading expedient of stating that they adopt not only all preceding paragraphs of their complaint, but also "any additional factual averments set forth in any subsequent portion of this Complaint are realleged and incorporated herein as if fully set out." (Emphasis supplied.) Accordingly, each count of the complaint alleges, by incorporation pursuant to that pleading device, that all of the defendants "combined and concurred in their actions, misrepresentations and in the suppression of material facts" and references their "joint, combining, and concurring wrongs." These allegations are sufficiently analogous to the conspiracy claims involved in Southern Energy Homes, Inc. v. Gary, 774 So.2d 521 (Ala. 2000), and Ex parte Napier, 723 So.2d 49 (Ala.1998), to be subject to the rationale of those cases that such claims made jointly against a signatory and nonsignatory to an arbitration agreement lead to the conclusion that the claims are sufficiently intertwined that all of them must be arbitrated.
Because I conclude that Terminix Service is entitled under the agreement to arbitrate the claims against it, I do not reach its alternative contention that it is entitled to arbitration of those claims under the separate arbitration provision contained in the Plan.
The claims of fraudulent misrepresentation and suppression asserted against Murphy, all premised on alleged misrepresentations made by him by way of the Report as the Terminix Service employee who signed it and represented therein that he had conducted the underlying visual inspection, are subject to arbitration based on the same reasoning applicable to Terminix Service. See Ex parte Gray, 686 So.2d 250 (Ala.1996).
LYONS, Justice (concurring in the result).
I agree that the transaction between the Ritzes and the Butlers had a substantial effect upon interstate commerce and that the arbitration clause in the real-estate contract between them was broad enough to compel the arbitration of the Butlers' claims against the Ritzes. Therefore, I agree that the trial court erred in denying the Ritzes' motion to compel arbitration. I do not believe that Swanson v. Green, 572 So.2d 1246 (Ala.1990), relied upon by Justice Woodall in his dissent, invalidates the arbitration clause. The arbitration clause in the real-estate contract called for the arbitration of any dispute arising out of the relationship created by the agreement, and it has a field of operation beyond the mere delivery of a deed. Swanson dealt solely with matters necessary to effectuate the transfer of title; much more is at issue in this case.
As to the Butlers' claims against Terminix, the Butlers should be compelled to arbitrate those claims because they are intertwined with their claims against the Ritzes. The Butlers have specifically alleged conspiracy claims against Terminix and the Ritzes; we have held that conspiracy claims against both a signatory and a nonsignatory to a contract are particularly susceptible to being intertwined for arbitration purposes. See, e.g., Southern Energy Homes, Inc. v. Gary, 774 So.2d 521 (Ala.2000); and Ex parte Napier, 723 So.2d 49 (Ala.1998). Therefore, I also *20 agree that the trial court erred in denying Terminix's motion to compel arbitration.
SEE, J., concurs.
JOHNSTONE, Justice (dissenting).
The Butlers cannot be compelled to arbitrate their claims against the Ritzes inasmuch as a substantial effect on interstate commerce is missing. The sale of a used, permanently placed home is not interstate commerce. The ripple effect of money does not impart interstate commerce to such a sale.
The Butlers cannot be required to arbitrate their claims against Terminix Service inasmuch as a substantial effect on interstate commerce is missing, an agreement to arbitrate is missing, and an estoppel is missing. Whatever interstate commerce occurred between Terminix Service and the Ritzes had terminated by the time the Ritzes sold the house to the Butlers. The Butlers did not make any agreement to arbitrate with Terminix Service, and the arbitration agreement the Butlers made with the Ritzes does not confer any third-party beneficiary status on Terminix Service and does not estop the Butlers either to deny the absence of a contract to arbitrate with Terminix Service or to deny third-party beneficiary status in Terminix Service. No aspect of the arbitration agreement between the Ritzes and the Butlers manifests any assent as required by Ex parte Stamey, 776 So.2d 85 (Ala. 2000), by the Butlers to arbitrate with Terminix Service. Likewise, the record contains no substantial evidence that Terminix Service issued the termite contract in reliance on any conduct by the Butlers manifesting any assent to arbitrate with Terminix Service.
WOODALL, Justice (dissenting).
I respectfully dissent. The lead opinion is premised on the enforceability of an arbitration clause contained in a real-estate purchase agreement. Since the closing has occurred and the property has been conveyed by warranty deed, that "contract becomes `functus officio' and the deed becomes the sole memorial of the parties' agreement." Swanson v. Green, 572 So.2d 1246, 1248 (Ala.1990)(footnote omitted). There is no claim that the deed contains any arbitration agreement. Therefore, I am convinced that this Court is giving effect to an arbitration provision that no longer exists.