Allied Williams Companies, Inc., f/k/a Allied-Bruce Terminix Companies, Inc., d/b/a Terminix Service ("Terminix"), and Gary Welch, defendants in a proceeding in the Houston Circuit Court, appeal from the trial court's order denying their motion to compel arbitration of the claims of the plaintiffs below, Thomas D. Davis and Grace Davis. We reverse and remand.
 Facts
On October 7, 2000, the Davises executed a real-estate purchase agreement ("the purchase agreement"), pursuant to which they purchased from Diane Stevenson a house located in Midland City. The purchase agreement contained, among other things, an arbitration provision.
The purchase agreement required Stevenson, as the seller, to pay for a "termite certification" from a licensed pest-control provider to verify that the house was free from any active infestation by wood-destroying insects or fungus.[1]
Stevenson hired Terminix to perform the inspection and to prepare the appropriate certification. Welch, an employee of Terminix, inspected the house and prepared an "Official Alabama Wood Infestation Inspection Report." The report stated that there was no active infestation in the house, but that there was visible evidence of a previous termite infestation.
The Davises claim that they relied on Terminix's report in purchasing the house. However, following the closing of the purchase of the house, the Davises allegedly discovered that the house had been damaged by a previous powder post beetle infestation. On February 10, 2003, the Davises sued Terminix and Welch, alleging fraud, negligence, wantonness, and suppression.[2] On July 21, 2003, Terminix and Welch filed a motion to compel arbitration of the Davises' claims. After a hearing, the trial court denied the motion to compel arbitration. Terminix and Welch appeal.
 Standard of Review
"Review of a trial court's denial of a motion to compel arbitration is properly sought through a direct appeal. Rule 4(d), Ala. R.App. P.; A.G. Edwards Sons, Inc. v. Clark,558 So.2d 358, 360 (Ala. 1990). We apply the de novo standard of review to such appeals. Green Tree Fin. Corp. of Alabama v.Vintson, 753 So.2d 497, 502 (Ala. 1999).
 "II. "A party seeking to compel arbitration has the burden of proving: (1) the existence of a contract containing an arbitration agreement and (2) that the underlying contract evidences a transaction affecting interstate commerce. Kenworth of Birmingham, Inc. v. Langley, 828 So.2d 288, 290 (Ala. 2002). Once those two items have been shown, the burden shifts to the opposing party to present evidence either that the arbitration agreement is not valid or that it does not apply to the dispute in question. Id."
Jim Walter Homes, Inc. v. Saxton, 880 So.2d 428, 430 (Ala. 2003). *Page 699 
 Discussion I.
Section 2 of the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("the FAA"), provides: "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable. . . ." 9 U.S.C. § 2. The FAA "mandates the arbitration of claims encompassed by an arbitration clause that is contained in a binding contract that involves interstate commerce." Ex parte Conference America, Inc., 713 So.2d 953,955 (Ala. 1998).
In determining whether a transaction "involves" interstate commerce, this Court looks to whether Congress's Commerce Clause[3] power can reach the activity that is the basis of the transaction:
 "The Supreme Court has acknowledged that the FAA is a constitutional exercise of Congress's Commerce Clause power. . . . [E]conomic or commercial transactions (such as, for example, the buying and selling of goods or services, contracting for employment, etc.), even one that is purely intrastate, are within the reach of the FAA if the `"general practice" those transactions represent' has, in the aggregate, a substantial effect on interstate commerce. Citizens Bank [v. Alafabco, Inc., 539 U.S. 52, 58 (2003)].
 ". . . In a very real sense, an argument that a transaction does not `involve' commerce under the FAA is actually an argument that Congress does not have the constitutional power under the Commerce Clause to reach and regulate that type of transaction. As the decisions of the United States Supreme Court have made clear, there are few, if any, economic or commercial transactions that are beyond the reach of Congress's commerce power. Furthermore, virtually every kind of industry, small or large, is currently regulated by some sort of federal statute enacted pursuant to Congress's commerce power. . . .
". . . .
 ". . . While there can be no per se rule that would preclude a trial court's role in evaluating whether a contract `evidenc[es] a transaction involving commerce,' see [United States v.] Morrison [, 529 U.S. 598, 614 (2000)], given the above, a trial court evaluating a contract connected to some economic or commercial activity would rarely, if ever, refuse to compel arbitration on the ground that the transactions lacked `involvement' in interstate commerce."
Service Corp. Int'l v. Fulmer, 883 So.2d 621, 627-29 (Ala. 2003) (footnotes omitted).
In deciding whether a contract calling for arbitration triggers the application of the FAA, this Court must determine whether the transaction "affected interstate commerce or if the economic activity in question represents a general practice subject to federal control. If either of these questions can be answered affirmatively, the FAA is triggered." Huntsville Utils. v.Consolidated Constr. Co., 876 So.2d 450, 454-55 (Ala. 2003).
On appeal, Terminix and Welch contend that the transaction in this case affected interstate commerce because several parties involved in the sale of the house to the Davises were multistate corporations and to accomplish the sale funds were transferred across state lines. We agree. *Page 700 
Several factors in this case establish the requisite impact on interstate commerce. First, two of the parties involved in the transaction were multistate corporations that engaged in business outside Alabama. According to the affidavit of Joseph P. Jones, vice president and general counsel of Terminix, Terminix is an Arkansas corporation that does business in eight states, including Alabama. Furthermore, the Davises' realtor, Wright Real Estate Company, Inc., d/b/a RE/MAX Real Estate Professionals ("RE/MAX"), which represented the Davises at the closing on the purchase of the house and which was paid $1,600 for its services, is a licensed franchise of RE/MAX International, Inc., a business that operates in all 50 states. See Bowen v. Security PestControl, Inc., 879 So.2d 1139, 1142 (Ala. 2003) (holding that a transaction involved interstate commerce, in part, because one of the parties to the transaction engaged in commerce in both Alabama and Georgia); Citizens Bank v. Alafabco, Inc.,539 U.S. 52, 57, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003) (holding that Congress's Commerce Clause power extended to the transaction in that case because, among other things, one of the parties to the transaction "engaged in business throughout the southeastern United States"). According to the affidavit of Ralph J. Wright, the president of RE/MAX, RE/MAX transferred $160 to RE/MAX's regional office located in Kansas City, Missouri, as a commission for the sale of the house.[4]
The impact of these factors, standing alone, on interstate commerce is arguably de minimis. However,
 "[t]he application of the FAA is not defeated if the individual transaction at issue, taken alone, does not have a substantial effect on interstate commerce. Citizens Bank [v. Alafabco, Inc.], 539 U.S. [52] at 56, 123 S.Ct. [2037] at 2040, 156 L.Ed.2d 46 [(2003)]. Instead, `Congress' Commerce Clause power "may be exercised in individual cases without showing any specific effect upon interstate commerce" if in the aggregate the economic activity in question would represent "a general practice . . . subject to federal control."' Id. (quoting Mandeville Island Farms, Inc. v. American Crystal Sugar Co., 334 U.S. 219, 236, 68 S.Ct. 996, 92 L.Ed. 1328 (1948))."
Bowen, 879 So.2d at 1141. See also Fulmer, 883 So.2d at 627
("[P]urely intrastate economic or commercial transactions can be within the reach of Congress if the `"general practice" those transactions represent' has, in the aggregate, a substantial effect on interstate commerce." (quoting Citizens Bank,539 U.S. at 58, 123 S.Ct. 2037)). We cannot hold that the "aggregate effect" of the economic activity at issue in this case — viewed on a nationwide scale — would not have a substantial effect on interstate commerce. Therefore, we hold that Terminix and Welch have demonstrated that Stevenson's sale of the house to the Davises "involves interstate commerce."[5] ConferenceAmerica, 713 So.2d at 955. *Page 701 
 II.
The Davises argue that, even if the transaction affects interstate commerce, Terminix and Welch cannot compel arbitration pursuant to the arbitration provision in the purchase agreement because they were nonsignatories to the purchase agreement. Terminix and Welch, however, argue that the Davises are estopped from arguing that Terminix and Welch cannot enforce the arbitration provision in the purchase agreement.
Normally, a party cannot be forced to submit a dispute to arbitration if the party has not first assented to do so. Exparte Stamey, 776 So.2d 85, 88 (Ala. 2000).
 "Assent to arbitrate is usually to be manifested through a party's signature on the contract containing the arbitration provision. However, both Federal courts and Alabama courts have enforced exceptions to this rule, so as to allow a nonsignatory, and even one who is not a party, as to a particular contract, to enforce an arbitration provision within that same contract."
776 So.2d at 88-89. One such exception is the doctrine of equitable estoppel, which, when applicable, prevents a party to an agreement from asserting that an arbitration provision in the agreement cannot be enforced by a nonparty. In Stamey, this Court described when the doctrine of equitable estoppel can be invoked:
 "In order for a party to be equitably estopped from asserting that an arbitration agreement cannot be enforced by a nonparty, the arbitration provision itself must indicate that the party resisting arbitration has assented to the submission of claims against nonparties — claims that would otherwise fall within the scope of the arbitration provision — to arbitration. See Ex parte Napier, 723 So.2d [49,] 53 [(Ala. 1998)]. All that is required is (1) that the scope of the arbitration agreement signed by the party resisting arbitration be broad enough to encompass those claims made by that party against nonsignatories, or that those claims be `intimately founded in and intertwined with' the claims made by the party resisting arbitration against an entity that is a party to the contract, and (2) that the description of the parties subject to the arbitration agreement not be so restrictive as to preclude arbitration by the party seeking it. See Id."
Stamey, 776 So.2d at 89.
The Davises argue that the scope of the arbitration provision in this case is too narrow to encompass their claims against Terminix and Welch and that the descriptions of the parties in the provision precludes its enforcement by nonparties. The arbitration provision in the purchase agreement states:
 "Purchaser/s and Seller/s expressly agree that any dispute relating to this agreement[,] to any breach thereof, to the relationship created by this agreement, or to the payment of fees, shall be settled by arbitration. The parties hereto agree that this agreement substantially involves interstate commerce."
This Court has refused to apply the doctrine of equitable estoppel where the language of an arbitration provision limited arbitration to the signing parties. See, e.g., Med Ctr. Cars,Inc. v. Smith, 727 So.2d 9, 11 (Ala. 1998).
The arbitration provision at issue in Med Center Cars stated:
 "BUYER HEREBY ACKNOWLEDGES AND AGREES THAT ALL DISPUTES AND CONTROVERSIES OF EVERY KIND AND NATURE BETWEEN BUYER AND SELLER ARISING OUT OF OR IN CONNECTION *Page 702 
WITH THE PURCHASE OF THIS VEHICLE WILL BE RESOLVED BY ARBITRATION WITH THE PROCEDURE SET FORTH ON THE REVERSE SIDE OF THIS BUYER'S ORDER."
727 So.2d at 13 (capitalization in original). This Court held that the language of the arbitration clause was not broad enough to encompass claims against the nonsignatories because the agreement limited the claims that might be submitted to arbitration to those "between buyer and seller." 727 So.2d at 19.
This Court has previously examined the ability of nonsignatories to enforce the same arbitration provision involved in this case. In Allied-Bruce Terminix Cos. v. Butler,816 So.2d 9 (Ala. 2001), the plaintiffs, the Butlers, purchased a house from the Ritzes. The real-estate purchase agreement inButler was substantially similar to the purchase agreement in this case, and also required the seller to obtain a termite certification. 816 So.2d at 13. The Ritzes contracted with Terminix to perform the certification, and the Butlers purchased the house. Subsequently, the Butlers sued the Ritzes, Terminix, and Terminix's agent, alleging that the defendants had misrepresented the condition of the house. The defendants moved to compel arbitration under an arbitration provision identical to the one included in the purchase agreement in this case.816 So.2d at 11.
On appeal, a plurality of this Court held that the Ritzes were equitably estopped from asserting that Terminix and its agent could not compel arbitration under the arbitration provision.816 So.2d at 14. The main opinion noted that the scope of the arbitration provision was not limited to claims between the Butlers and the Ritzes. Moreover, the Butlers' claims against Terminix and its agent related to the purchase agreement, because it established the relationship between the Butlers and Terminix. Therefore, the main opinion held that the Butlers were estopped from asserting that Terminix or its agent could not enforce the arbitration provision. Id.
The arbitration provision in this case is not limited to claims between the Davises and Stevenson. Instead, it provides that the "Purchaser/s," i.e., the Davises, agree that "any dispute" relating to the purchase agreement — not just disputes "between" the "Purchaser/s" and the "Seller/s" — would be submitted to arbitration. Moreover, the Davises' claims against Terminix and Welch arise out of a relationship created by the purchase agreement and an alleged breach of a duty the Davises say was created by the transaction and embodied in the purchase agreement. We therefore hold that the Davises are equitably estopped from asserting that Terminix and Welch cannot enforce the arbitration provision. See Butler, 816 So.2d at 13-14.
 Conclusion
Terminix and Welch have demonstrated the existence of a contract evidencing a transaction involving interstate commerce and have demonstrated that they are entitled to enforce the arbitration provision in the purchase agreement. Therefore, the trial court erred in denying their motion to compel arbitration. Its order denying that motion is reversed, and the case is remanded for an order or proceedings consistent with this opinion.
REVERSED AND REMANDED.
NABERS, C.J., and SEE, HARWOOD, and STUART, JJ., concur.
[1] The purchase agreement stated: "TERMITE CERTIFICATION:Seller agrees to pay for termite certification from a state licensed and bonded operator, stating that a visual inspection of accessible areas INDICATES THE DWELLING is free and clear of any active infestation by wood destroying insects or fungus and any damage caused by active infestation and structural damages therefrom. THIS IS NOT A STRUCTURAL DAMAGE REPORT NOR A WARRANTY AS TO THE ABSENCE OF WOOD DESTROYING INSECTS." (Capitalization in original.)
[2] Stevenson was not made a party to the action.
[3] See U.S. Const. art. I, § 8, cl. 3.
[4] The Davises claim that certain portions of Wright's affidavit contain information that is apparently not based on Wright's personal knowledge. In rendering this decision, this Court did not consider those portions of Wright's affidavit.
[5] Terminix and Welch further argue that the transaction at issue in this case is subject to federal regulation. Specifically, Terminix and Welch contend that the sale of the house is regulated by the federal Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601-2617. However, that act regulates only transactions involving a "federally related mortgage loan." See 12 U.S.C. § 2603. The Davises paid cash for the house, and the record does not reveal whether a federally related mortgage loan exists in this case. *Page 703