821 So.2d 186 (2001)
BLUE RIBBON HOMES SUPER CENTER, INC.
v.
Kenneth B. BELL and Valerie L. Hill.
1000820.
Supreme Court of Alabama.
November 9, 2001.
*187 Cowin Knowles and E. Hamilton Wilson, Jr., of Ball, Ball, Matthews & Novak, P.A., Montgomery, for appellant.
Garve Ivey, Jr., of Ivey & Ragsdale, Jasper, for appellees.
STUART, Justice.
Blue Ribbon Homes Super Center, Inc. ("Blue Ribbon"), a defendant in an action pending in the Hale Circuit Court, appeals from the trial court's denial of its motion to compel arbitration. We reverse and remand with instructions to the trial court to grant Blue Ribbon's motion to compel arbitration.

Procedural Background
On May 5, 1993, Kenneth B. Bell and Valerie L. Hill filed an 11-count complaint in the Hale Circuit Court against Blue Ribbon, a seller of mobile homes, and Crimson Industries, Inc., a mobile-home manufacturer. On June 8, 1999, Blue Ribbon removed the action to the United States district court, alleging that the Hale Circuit Court lacked subject-matter jurisdiction. The removal was made subject to all claims and defenses available to Blue Ribbon and was expressly made subject to Blue Ribbon's right to compel arbitration, pursuant to the Federal Arbitration Act, 9 U.S.C. § 2. Blue Ribbon filed a motion to compel arbitration while the action was pending in federal court. Bell and Hill filed a motion to remand the case to the Hale Circuit Court. After considering Bell and Hill's motion to remand and Blue Ribbon's response to that motion, the United States district court, on August 18, 1999, remanded this action to the Hale Circuit Court.
After the case was remanded, the only motions Blue Ribbon filed sought to dismiss the action and to compel arbitration. Bell and Hill requested the right to engage in discovery regarding the enforceability of the arbitration provision, and Blue Ribbon presumably participated in such discovery. After allowing Bell and Hill multiple continuances to conduct the discovery they had requested, the trial court denied Blue Ribbon's motion to compel arbitration. The trial court's order, entered on December 8, 2000, contained no findings of fact or conclusions of law, and the record reflects that no evidence was presented in opposition to Blue Ribbon's motion to compel arbitration.
Blue Ribbon appeals from the trial court's order denying its motion to compel arbitration. Plaintiffs respond that Blue *188 Ribbon waived its right to compel arbitration by substantially invoking the litigation process.

Factual Background
On May 11, 1995, Bell and Hill purchased a mobile home from Blue Ribbon. Blue Ribbon is located in Alabama. Crimson Industries manufactured the mobile home at its facility in Alabama.
In connection with their purchase of the mobile home, Bell and Hill executed a sales contract. Paragraph 16 of the sales contract provides, in pertinent part:
"16. ARBITRATION AGREEMENT. The parties agree that the Mobile Home sold to Purchaser has been [in] interstate commerce an[d] any complaint between [the] parties is to be settled by binding arbitration. PURCHASER WAIVES ANY RIGHT HE HAS TO COMMENCE AN ACTION OTHER THAN ARBITRATION AGAINST SELLER. Any controversy or claim arising out of or relating to this contract, or breach thereof, shall be settled under common law arbitration, in accordance with the rules of the American Arbitration Association. The procedure of which is outlined in the arbitration agreement between Blue Ribbon Homes Super Center, Inc. and Purchaser. [Sic.]"
Also as part of their purchase transaction, Bell and Hill executed a stand-alone arbitration agreement with Blue Ribbon. This stand-alone arbitration agreement was entitled "ARBITRATION AGREEMENT BETWEEN BLUE RIBBON HOMES SUPER CENTER, INC. AND KENNETH B. BELL & VALERIE L. HILL"; it provides:
"Any controversy or claim arising out of or relating to that contract, or breach thereof, between Blue Ribbon Homes Super Center, Inc. and KENNETH B. BELL [and] VALERIE L. HILL, dated 5-11-95, shall be settled under common law arbitration in accordance with the rules of the American Arbitration Association.
"Blue Ribbon Homes Super Center, Inc. and Purchaser acknowledge and agree the mobile home sold by Blue Ribbon Super Center, Inc. and purchased by purchaser has been in interstate commerce.
"Either party shall have 60 days from the time the controversy, dispute or difference of opinion arose to make a written demand for arbitration by filing a demand in writing to the other.
"One arbitrator shall be chosen by Blue Ribbon Homes Super Center, Inc. and the other by said purchaser, and an umpire shall be chosen by the two arbitrators before they enter upon arbitration. In the event that either party should fail to choose an arbitrator within 30 days after a written demand by the other to do so, the requesting party shall chose [sic] two arbitrators who shall in turn chose [sic] an umpire before entering arbitration. If the two arbitrators fail to agree upon the selection of an umpire within 30 days following their appointment, each arbitrator shall nominate three candidates within ten days thereafter, two of whom the other shall decline, and the decision shall be made by drawing lots.
"All arbitration hearings and all judicial proceedings to enforce any of the provisions hereof shall take place in Tuscaloosa County, Alabama. The hearing before the arbitration of the matter to be arbitrated shall be at the time and place within said county as is selected by the arbitrators. Notice shall be given and the hearing conducted in accordance with the rules of the American Arbitration Association. The arbitrators shall hear and determine the matter and shall *189 execute and acknowledge their award in writing and deliver a copy thereof to each of the parties by registered or certified mail.
"The decision of the arbitrators shall be final and binding on both parties; but failing to agree, they shall call upon the umpire and the decision of the umpire shall be final and binding upon both parties. The submission of a dispute to the arbitrators, and umpire if necessary, and the rendering of their decision shall be a condition precedent to any right of legal action on the dispute. Judgment upon the final decision of the arbitrators may be entered in any court of competent jurisdiction and such is not appealable. Arbitration in this agreement shall be mandatory and not permissive.
"Each party shall bear the expense of its own arbitrator and shall jointly and equally bear with the other expense of the umpire and of the arbitration. In the event two arbitrators are chosen by one party, as provided above, the expenses of the arbitrators, the umpire and the arbitration shall be equally divided between the two parties."
The record before this Court reveals that, although Crimson Industries manufactures its mobile homes within Alabama, it purchases from out-of-state sources products such as carpet, tires, siding, and shingles. Crimson Industries incorporates those products into the mobile homes it manufactures. The record also reveals that Bank America Housing Services provided the financing for Bell and Hill's purchase of the mobile home. Bank America Services is a division of Bank America, FSB (hereinafter "Bank America"), a corporate federal savings bank organized and existing under the laws of the State of Delaware, with its principal place of business in California.
Additionally, the record contains affidavit testimony establishing that, as part of the May 11, 1995, sales transaction with Bell and Hill, Blue Ribbon sold Bell and Hill, in addition to the mobile home, air conditioning units, furniture, straps, anchors, and steps. The affidavits submitted by Blue Ribbon establish that Blue Ribbon purchased these items from out-of-state sources.

Standard of Review
A direct appeal is the proper procedure by which to seek review of a trial court's denial of a motion to compel arbitration. See Southern United Fire Ins. Co. v. Howard, 775 So.2d 156 (Ala. 2000); A.G. Edwards & Sons, Inc. v. Clark, 558 So.2d 358, 360 (Ala.1990). But see Rule 4(d), Ala. R.App. P., as amended May 10, 2001, effective October 1, 2001. By that amendment, an order either granting or denying a motion to compel arbitration will be reviewed by appeal. This Court reviews de novo a trial court's denial of a motion to compel arbitration. First American Title Ins. Corp. v. Silvernell, 744 So.2d 883, 886 (Ala.1999); Crimson Indus., Inc. v. Kirkland, 736 So.2d 597, 600 (Ala.1999); and Patrick Home Ctr., Inc. v. Karr, 730 So.2d 1171 (Ala.1999).

Discussion
In Ex parte Greenstreet, Inc., 806 So.2d 1203, 1209 (Ala.2001), this Court held:
"[O]nce a moving party has satisfied its burden of production by making a prima facie showing that an agreement to arbitrate exists in a contract relating to a transaction substantially affecting interstate commerce, the burden of persuasion shifts to the party opposing arbitration. If that party presents no evidence in opposition to a properly supported motion to compel arbitration, then the trial court should grant the motion to compel arbitration."
*190 Here, Blue Ribbon has the initial burden of proof, because it is the party seeking to compel arbitration. Thus, our initial inquiry is whether Blue Ribbon has carried its burden of proof in making a "prima facie showing that an agreement to arbitrate exists in a contract relating to a transaction substantially affecting interstate commerce." Ex parte Greenstreet, supra. If Blue Ribbon has met this burden, then the burden shifts to Bell and Hill as the party opposing the motion to compel arbitration. Once the burden has shifted, we consider whether Bell and Hill have established their defense to Blue Ribbon's properly supported motion, i.e., whether Blue Ribbon has waived its right to invoke the parties' arbitration agreement by substantially invoking the litigation process.

Blue Ribbon's Burden of Proof
The record before this Court establishes that an "agreement to arbitrate exists in a contract relating to a transaction substantially affecting interstate commerce." Ex parte Greenstreet, supra. We recently held that "[a]n Alabama resident's purchase of a new mobile homeeven one manufactured in Alabamacan be a transaction that substantially affects interstate commerce, and the evidence indicates that the McCrays' purchase of their mobile home was such a transaction." Southern Energy Homes, Inc. v. McCray, 788 So.2d 882, 883 (Ala.2000). In McCray, the evidence before the Court established that, although Southern Energy manufactured mobile homes within Alabama, the funds it used to conduct business came from banking institutions located out of state and many of the parts incorporated into the mobile homes were acquired from suppliers outside of Alabama and were shipped in interstate commerce to Southern Energy's plant in Alabama. Id. at 883 n. 1.
As was the case in McCray, Blue Ribbon presented evidence indicating that Bell and Hill's purchase of the mobile home affected interstate commerce. Affidavits provided by Thomas Deas, Blue Ribbon's president, provide, in pertinent part:[1]
"The transaction [between Blue Ribbon and Bell and Hill] involved interstate commerce in a number of ways, including that the goods which were used in the manufacturing process of the subject mobile home were manufactured in other states and were involved in interstate commerce. In addition, the financing for the purchase of the subject home involved a foreign corporation, whose principal place of business was not located in the State of Alabama."
"The home did not come from the manufacturer with an air conditioning unit. Blue Ribbon Homes sold and installed the air conditioning unit in question. At the time this home was sold to [Bell and Hill], Blue Ribbon Homes purchased the air conditioning units that it installed from Stylecrest Products, Inc., 65 Industrial Court E, Villa Rica, Georgia.
"Blue Ribbon Homes sold Kenneth Bell and Valerie Hill a kitchen table and four chairs, a sofa, chairs, and an end table. At the time of this sale, all furniture items sold by Blue Ribbon Homes were purchased from Lafort Wholesale Furniture, 5250 Fulton Industrial Blvd., Atlanta, Georgia, or F.A. Hulett and Sons in Meridian, Mississippi.
"Blue Ribbon Homes handled the installation and the setup of Kenneth Bell and Valerie Hill's home. At the time this home was sold to Kenneth Bell and *191 Valerie Hill, Blue Ribbon Homes purchased all of the anchors and straps that it used to tie the house down from either Stylecrest Products, Inc. in Villa Rica, Georgia, or from Kaufman Supply in Atlanta, Georgia.
"Kenneth Bell and Valerie Hill's home was sold with steps. At the time the home was sold to Kenneth Bell and Valerie Hill, Blue Ribbon Homes purchased all of its fiberglass steps from Stylecrest Products in Villa Rica, Georgia, or its wood steps from Gene's Step Company, Inc., located at 1079 Beltline Highway N.E., Brookhaven, Mississippi."
Blue Ribbon also presented an affidavit of Larry Wilhite, the former manager of customer service for Bank America, the company that provided the financing for Bell and Hill's purchase of the mobile home; that affidavit states, in pertinent part:
"BankAmerica is a corporate Federal Savings Bank organized and existing under the laws of the state of Delaware, with its principal place of business in San Diego, California."
Finally, testimony from Gary Mize, the human resources director and assistant to the president of Crimson Industries, revealed the following:
"Q: Gary, how may States does Crimson Industries do business in?
"A: As far as I know, 18 states.
"Q: And those are states in which Crimson sells homes directly to retail dealers in 18 different states?
"A: That's right.
". . . .
"Q: And you said earlier that Crimson purchases products for the homes that have to travel to Alabama. What are some of the products that you have to purchase that go into the makeup of manufactured homes that come from out-of-state?
"A: Well, I mentioned earlier carpet. I don't think there's a carpet manufacturer in the State of Alabama. Tires. I'm surewell, we do have tire manufacturers in the state, but I don't think they manufacture home tires.
"Q: Okay.
"A: We use siding on our homes, and I don't think the siding is manufactured in the state. Some of our wood components, themselves, are shipped to us from out-of-state.
"Q: Does Crimson buy
"A: Shingles are made in Mississippi.
". . . .
"Q: And you said earlier that the appliances are manufactured out-of-state and shipped in?
"A: That's right."
We conclude that the evidence in this case indicates that Bell and Hill's purchase of the mobile home was a transaction that substantially affected interstate commerce. Therefore, Blue Ribbon properly supported its motion to compel arbitration and the burden of persuasion shifted to Bell and Hill to oppose that properly supported motion.

Bell and Hill's Burden of Proof
The only opposition Bell and Hill offered to Blue Ribbon's properly supported motion to compel arbitration was their claim that Blue Ribbon had waived its right to compel arbitration by substantially invoking the litigation process. We note that there is a presumption against finding that a party has waived the right to compel arbitration. See Lee v. YES of Russellville, Inc., 784 So.2d 1022, 1028 (Ala.2000); Eastern Dredging & Constr., Inc. v. Parliament House, L.L.C., 698 So.2d 102 (Ala.1997). "A party seeking to prove a waiver of a right to arbitrate carries a heavy burden, and the courts will *192 not lightly infer a waiver of the right to compel arbitration." Lee, supra, at 1028-29, citing Mutual Assurance, Inc. v. Wilson, 716 So.2d 1160 (Ala.1998).
In First Family Financial Services, Inc. v. Jackson, 786 So.2d 1121 (Ala.2000), this Court addressed the question whether the defendant in that case had waived its right to compel arbitration. This Court stated:
"We will find a waiver of the right to compel arbitration only when `the party seeking arbitration has so substantially invoked the litigation process that to compel arbitration will substantially prejudice the party opposing it.' Georgia Power Co. v. Partin, 727 So.2d 2, 7 (Ala.1998). In Companion Life Insurance Co. v. Whitesell Manufacturing, Inc., 670 So.2d 897 (Ala.1995), this Court said:
"`Whether a party's participation in an action amounts to an enforceable waiver of its right to arbitrate depends on whether the participation bespeaks an intention to abandon the right in favor of the judicial process and, if so, whether the opposing party would be prejudiced by a subsequent order requiring it to submit to arbitration. No rigid rule exists for determining what constitutes a waiver of the right to arbitrate; the determination as to whether there has been a waiver must, instead, be based on the particular facts of each case.'
"670 So.2d at 899."
786 So.2d at 1128. The First Family Court continued:
"The record in this case shows unequivocally that First Family did not substantially invoke the litigation process before it moved to compel arbitration. The first document First Family filed was its motion to compel arbitration. Like the defendant in [Ex parte] Merrill Lynch [Pierce, Fenner & Smith, Inc., 494 So.2d 1 (Ala.1986)], First Family did not even answer the complaint. The only other documents in the record that First Family filed are its brief in support of its motion to compel arbitration, evidentiary filings also in support of that motion, and its notice of appeal to this Court. Jackson had the heavy burden of proving both that First Family had substantially invoked the litigation process and that he was prejudiced thereby. He did not meet that burden."
Id. (citations and emphasis omitted).
In this case, as in First Family, the record unequivocally shows that Blue Ribbon did not "bespeak[] an intention to abandon the right [of arbitration] in favor of the judicial process." Id. at 1128. In its initial filing, the notice of removal to federal court, Blue Ribbon expressly referenced its right to compel arbitration and, in fact, Blue Ribbon immediately followed the filing of its notice of removal with the filing of a motion to compel arbitration. Cf. Ex parte Hood, 712 So.2d 341 (Ala. 1998) ("`"By [removing the case to federal district court] without at the same time asking the district court for an order to arbitrate, [the defendant] manifested an intention to resolve the dispute through the processes of the federal court."'") (quoting Companion Life Ins. Co. v. Whitesell Mfg., Inc., 670 So.2d 897, 900 (Ala.1995) (emphasis added)). Additionally, the record reflects that the only other documents Blue Ribbon filed in this action pertained to dismissal of the case, to arbitration, or to the filing of an appeal of the trial court's order.
We conclude that Bell and Hill have not met their burden of proving that Blue Ribbon substantially invoked the litigation process. Therefore, we conclude that Blue Ribbon has not waived its right to compel arbitration. Because Bell and Hill have not proven that Blue Ribbon substantially *193 invoked the litigation process, we need not address the element of prejudice.
Blue Ribbon has properly supported its motion to compel arbitration. Bell and Hill have failed to meet their burden of proof in establishing that Blue Ribbon waived its right to compel arbitration by substantially invoking the litigation process. For these reasons, we conclude that the trial court erred in denying Blue Ribbon's motion to compel arbitration. We reverse the trial court's order of December 8, 2000, and remand this case to the trial court for the entry of an order granting Blue Ribbon's motion to compel arbitration.
REVERSED AND REMANDED WITH INSTRUCTIONS.
HOUSTON, SEE, LYONS, BROWN, HARWOOD, and WOODALL, JJ., concur.
MOORE, C.J., and JOHNSTONE, J., dissent.
JOHNSTONE, Justice (dissenting).
I respectfully dissent. The defendants have not carried their initial burden of proving that the sale of this mobile home to these plaintiffs substantially affected interstate commerce.
The recitations in the agreements that the mobile home "ha[d] been in interstate commerce" did not prove that it had not "come to rest" in Alabama before the sale to the plaintiffs. See Ex parte Kampis, [Ms. 1000099, September 21, 2001] (Ala. 2001).[*] Likewise, for aught that appears in the affidavits, the components incorporated into the mobile home had "come to rest" in Alabama before they were incorporated. Id. That the principal place of business of Bank America Housing Services is in California does not establish that the financing for this purchase came from California. Likewise, the organization and incorporation of Bank America Housing Services under the laws of Delaware does not establish that the financing came from Delaware. Indeed, the defendants studiously avoid saying the financing came from out of state. The contract and transaction that must have substantially affected interstate commerce to support the application of the Federal Arbitration Act is the one between the plaintiffs and the defendants. Other contracts or transactions between the defendants and out-of-state persons or entities are irrelevant.
The record establishes without dispute that this mobile home was manufactured within Alabama and was sold by an Alabama seller to the Alabama resident plaintiffs. This transaction was local, not interstate. Therefore, the Federal Arbitration Act does not govern this case and does not preempt Alabama's statutory prohibition against the specific enforcement of predispute arbitration agreements, § 8-1-41(3), Ala.Code 1975. Therefore, the trial court did not err in denying the motion to compel arbitration.
NOTES
[1] Mr. Deas submitted multiple affidavits in support of Blue Ribbon's motion to compel arbitration. The excerpt quoted above is condensed from two of those affidavits.
[*] Note from the reporter of decisions: On February 8, 2002, the Alabama Supreme Court, on application for rehearing, withdrew its September 21, 2001, opinion and substituted another opinion.