On Application for Rehearing
The opinion of May 23, 2003, is withdrawn and the following is substituted therefor.
Huntsville Utilities, John Thomas, and Jimmy Stanley appeal from the denial of their motion to compel Consolidated Construction Company ("CCC") to arbitrate its claims against them. We reverse and remand.
 Facts
On October 19, 1999, CCC and Huntsville Utilities entered into an agreement entitled "Standard Form of Agreement Between Owner and Contractor where the basis of payment is a Stipulated Sum."[1] Pursuant to that agreement, CCC was to serve as the general contractor for renovations totaling $7,722,200 to the offices of Huntsville Utilities. Subparagraph 4.6.1 of that agreement provided:
 "4.6.1. Any claim arising out of or related to the Contract, except to aesthetic effect and except those waived as provided for in Subparagraphs 4.3.10, 9.10.4 and 9.10.5, shall, after decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Paragraph 4.5."
Huntsville Utilities had hired J.H. Partners Architecture and Interiors, P.C. ("J.H. Partners"), as the architect for the renovations; J.H. Partners drafted the plans and specifications for the renovation project. David Ely of J.H. Partners was named as the architect of record; Barry Broom, also an employee of J.H. Partners, was responsible for contract administration on the renovation project.
CCC, a corporation organized under the laws of Delaware, subcontracted the roofing work to Andrew W. Tjelmeland d/b/a Stahl Sheet Metal ("Stahl"), a Tennessee sole proprietorship doing business in Alabama. Stahl subcontracted the roofing work to Phil Morgan Roofing Company, an Alabama sole proprietorship.[2] CCC also hired a Florida firm, Conway Enterprises ("Conway"), to perform waterproofing at the project site. According to the record, all other subcontractors retained by CCC were based in Alabama.
According to CCC, it encountered substantial construction problems, design errors, and poor site conditions, all of which required CCC to perform substantial additional work and for which CCC says it is entitled to additional compensation. According to CCC, those problems — the design and specification errors and the site conditions — also delayed completion of the project. CCC contended that J.H. Partners failed to respond to requests for information, refused to work with CCC, interfered with CCC's performance of its contract, and otherwise performed in an unprofessional manner.
In November 2001, CCC sued J.H. Partners, Jones Herrin Architect/Interior *Page 452 
Design,[3] David Ely, and Barry Broom in the Madison Circuit Court, alleging professional negligence and breach of contract. In January 2002, CCC amended its complaint to add as defendants Stahl (the original roofing subcontractor); Stahl's insurer, Bituminous Casualty Corporation ("BCC"); and Phil Morgan Roofing Company (Stahl's Alabama sub-subcontractor). Stahl is a Tennessee resident who was doing business in Alabama. BCC is a corporation organized under the laws of Illinois with its principal place of business in Illinois. Phil Morgan is an Alabama resident. Against Stahl and Phil Morgan Roofing Company, CCC alleged negligence and breach of express warranties. Against BCC, CCC alleged breach of an insurance contract.[4]
In May 2002, CCC added Huntsville Utilities and two of its employees, John Thomas and Jimmy Stanley, as defendants (hereinafter referred to collectively as "the Huntsville Utilities defendants"). Against Huntsville Utilities, CCC asserted claims alleging breach of the construction contract, breach of warranty, and vicarious liability for the architect's negligence pursuant to a theory of respondeat superior. CCC also alleged unjustified and unexcused interference by Thomas and Stanley, as employees and agents of Huntsville Utilities, with CCC's contractual performance. A few months later, the claims asserted against all of the out-of-state defendants were settled or dismissed with prejudice.
On June 19, 2002, the Huntsville Utilities defendants filed a motion to dismiss, to compel arbitration, and/or for sanctions (hereinafter referred to as the "motion to compel arbitration"), relying upon the arbitration provision contained in the agreement between Huntsville Utilities and CCC.
On July 29, 2002, CCC filed another complaint. In that complaint, CCC clarified its allegations against J.H. Partners, Huntsville Utilities, Thomas, and Stanley. That complaint alleged negligence, breach of warranty, fraud, suppression, defamation, and tortious interference with CCC's contractual relationship with Huntsville Utilities and with CCC's subcontracts. On August 14, 2002, CCC again amended its complaint to allege that Huntsville Utilities had violated § 8-29-1, Ala. Code 1975, known as Alabama's Prompt Pay Act.
On September 6, 2002, the Huntsville Utilities defendants filed the affidavits of Thomas and Stanley and various invoices from out-of-state suppliers in support of their motion to compel arbitration. On October 1, 2002, the trial court denied the motion to compel arbitration, relying upon the five factors adopted by this Court in Sisters of the Visitationv. Cochran Plastering Co., 775 So.2d 759 (Ala. 2000).
The Huntsville Utilities defendants appeal from the denial of their motion to compel arbitration, raising the following issues:
 "A. Whether this Court [in Sisters of the Visitation] impermissibly limited the United States Supreme Court's broad interpretation of Section 2 of the Federal Arbitration Act by applying the [United States v.]Lopez[, 514 U.S. 549 (1995),] `substantial effects' standard to individual transactions involving interstate commerce? *Page 453 
 "B. Whether the circuit court erred in holding that a renovation project involving a contractor incorporated in Delaware, three out-of-state subcontractors, two out-of-state insurers, and the purchase and shipment of materials from twenty different states did not substantially affect interstate commerce?"
 Standard of Review
This Court's review of an order granting or denying a motion to compel arbitration is de novo. First American Title Ins. Corp. v. Silvernell,744 So.2d 883, 886 (Ala. 1999); Crimson Indus., Inc. v. Kirkland,736 So.2d 597, 600 (Ala. 1999); Patrick Home Ctr., Inc. v. Karr,730 So.2d 1171 (Ala. 1999).
 Discussion "A. Whether this Court [in Sisters of the Visitation] impermissibly limited the United States Supreme Court's broad interpretation of Section 2 of the Federal Arbitration Act by applying the [United States v.]Lopez[, 514 U.S. 549 (1995),] `substantial effects' standard to individual transactions involving interstate commerce?"
The Huntsville Utilities defendants first challenge the denial of their motion to compel arbitration by arguing that the "substantial-effect-on-interstate-commerce" standard, applied by the trial court and adopted by this Court in Sisters of the Visitation, supra, violates binding federal precedent. The Huntsville Utilities defendants argue that the standard previously applied by this Court to trigger application of § 2 of the Federal Arbitration Act ("the FAA") places an impermissibly high burden on parties seeking to enforce arbitration agreements.
In light of the recent ruling from the United States Supreme Court, we must agree. Since 2000, this Court has applied the five-factor test adopted in Sisters of the Visitation to determine whether a transaction substantially affected interstate commerce so as to trigger the application of the FAA. Since the adoption of that test, we have reviewed individual transactions in light of the following factors to determine whether interstate commerce was substantially affected as a result of the transaction: (1) whether the citizenship of the parties or the place for the performance of the contract established a substantial effect on interstate commerce; (2) where the tools and equipment used in connection with the transaction originated and whether they moved in interstate commerce; (3) whether the allocation of the cost of the services and materials required for the particular project established a substantial effect on interstate commerce; (4) whether the object of the contract was capable of subsequently moving across state lines and was therefore capable of having a subsequent impact on interstate commerce; and (5) the degree of separability between this transaction and other transactions or contracts that might substantially affect interstate commerce.
However, in Citizens Bank v. Alafabco, Inc., 539 U.S. 52,123 S.Ct. 2037 (2003), the United States Supreme Court reversed our judgment in Alafabco, Inc. v. Citizens Bank, [Ms. 1010703, August 30, 2002] 872 So.2d 798 (Ala. 2002), and recognized that the "substantial effect" test adopted in Sisters of the Visitation "gave inadequate breadth" to the language of the FAA. The United States Supreme Court stated:
 "We have interpreted the term `involving commerce' in the FAA as the functional equivalent of the more familiar term `affecting commerce' — words of art that ordinarily signal the broadest permissible exercise of Congress' *Page 454 
Commerce Clause power. Allied-Bruce Terminix Cos. [v. Dobson], 513 U.S., [265] at 273-274, 115 S.Ct. 834
[(1995)]. Because the statute provides for the `enforcement of arbitration agreements within the full reach of the Commerce Clause,' Perry v. Thomas, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987), it is perfectly clear that the FAA encompasses a wider range of transactions than those actually `in commerce' — that is, `within the flow of interstate commerce,' Allied-Bruce Terminix Cos., supra, at 273, 115 S.Ct. 834 (internal quotation marks, citation, and emphasis omitted).
 "The Supreme Court of Alabama was therefore misguided in its search for evidence that a `portion of the restructured debt was actually attributable to interstate transactions' or that the loans `originated out-of-state' or that `the restructured debt was inseparable from any out-of-state projects.' [Ms. 1010703, Aug. 30, 2002] 872 So.2d at 805. Such evidence might be required if the FAA were restricted to transactions actually '"in commerce,"' Gulf Oil Corp. v. Copp Paving Co., 419 U.S. 186, 195-196, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974), but, as we have explained, that is not the limit of the FAA's reach.
 "Nor is application of the FAA defeated because the individual debt-restructuring transactions, taken alone, did not have a `substantial effect on interstate commerce.' [Ms. 1010703, Aug. 30, 2002] 872 So.2d at 808. Congress' Commerce Clause power `may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent `a general practice . . . subject to federal control.' Mandeville Island Farms, Inc. v. American Crystal Sugar Co., 334 U.S. 219, 236, 68 S.Ct. 996, 92 L.Ed. 1328 (1948). See also Perez v. United States, 402 U.S. 146, 154, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971); Wickard v. Filburn, 317 U.S. 111, 127-128, 63 S.Ct. 82, 87 L.Ed. 122
(1942). Only that general practice need bear on interstate commerce in a substantial way. Maryland v. Wirtz, 392 U.S. 183, 196-197, n. 27, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968); NLRB v. Jones Laughlin Steel Corp., 301 U.S. 1, 37-38, 57 S.Ct. 615, 81 L.Ed. 893 (1937)."
Alafabco, 539 U.S. at 56-57, 123 S.Ct. at 2040.
Thus, in light of the United States Supreme Court's decision inAlafabco, we no longer apply the substantial-impact-on-interstate-commerce test adopted in Sisters of theVisitation, supra.[5] As the United States Supreme Court stated, the FAA is triggered even in "`individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent a general practice . . . subject to federal control." Alafabco, 539 U.S. at 56-57, 123 S.Ct. at 2040. Therefore, a "`party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that the contract involves a transaction affecting interstate commerce.'"Tefco Fin. Co. v. Green, 793 So.2d 755, 758 (Ala. 2001) (quoting Ex parteCaver, 742 So.2d 168, 172 n. 4 (Ala. 1999)).
CCC does not challenge the existence of a contract calling for arbitration. Therefore, we need determine only whether this transaction affected interstate commerce or if the economic activity in question *Page 455 
represents a general practice subject to federal control. If either of these questions can be answered affirmatively, the FAA is triggered.Alafabco, supra.
In this case, Huntsville Utilities and CCC agreed, pursuant to Article 3.4.1.1 of the Supplementary General Conditions of the agreement, that Huntsville Utilities would be responsible for acquiring all of the materials to be used for the renovation project, so that Huntsville Utilities could benefit from its tax-exempt status as a municipal entity. Huntsville Utilities acquired materials for this project from vendors in Alabama, Arkansas, California, Florida, Georgia, Illinois, Indiana, Kansas, Maine, Maryland, Michigan, Minnesota, Mississippi, Missouri, New York, North Carolina, Pennsylvania, South Carolina, Tennessee, and Texas. The Huntsville Utilities defendants submitted some 499 invoices to document this fact. Huntsville Utilities acquired the materials specifically for the performance of the renovation project.
There is little question that interstate commerce was affected as a result of this transaction. Numerous out-of-state vendors supplied the materials for this project; Huntsville Utilities paid out-of-state vendors for the materials; and the materials were necessarily shipped through the channels of interstate commerce. Therefore, this transaction involved interstate commerce and, under Alafabco, supra, this is sufficient to trigger the FAA.
The parties' agreement to arbitrate is enforceable. The trial court erred in denying the motion to compel arbitration filed by the Huntsville Utilities defendants.
 Conclusion
The Huntsville Utilities defendants have established the existence of a contract calling for arbitration and have established that the contract involves a transaction affecting interstate commerce. Therefore, they have met their burden of proof on their motion to compel arbitration. Accordingly, the trial court erred in denying the motion to compel arbitration. We reverse its order denying the motion, and we remand the case for further proceedings consistent with this opinion.
APPLICATION GRANTED; OPINION OF MAY 23, 2003, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
HOUSTON, SEE, LYONS, BROWN, JOHNSTONE, HARWOOD, and WOODALL, JJ., concur.
[1] This agreement was a form contract drafted by the American Institute of Architects.
[2] The roofing work apparently did not go well; CCC subsequently hired Denard Moore, a Tennessee company, to repair the roof. The roofing work by Phil Morgan Roofing Company was the basis of a breach-of-warranty action by CCC.
[3] J.H. Partners had formerly been known as Jones Herrin Architect/Interior Design.
[4] CCC was a named additional insured on the commercial general liability policy issued by BCC to Stahl. CCC sought coverage from BCC for the cost of removing and replacing the defective roof; BCC denied the claim.
[5] For this reason, we need not reach the second issue raised by the Huntsville Utilities defendants.