959 So.2d 624 (2006)
SOUTHTRUST BANK
v.
George C. BOWEN, Jr.
1040411.
Supreme Court of Alabama.
December 8, 2006.
*626 Christopher M. Mims of Farmer, Farmer & Malone, P.A., Duncan, for appellant.
Joel W. Weatherford and Russell N. Parrish of Farmer, Price, Hornsby & Weatherford, L.L.P., Dothan, for appellee.
SMITH, Justice.
The plaintiff below, SouthTrust Bank, appeals the trial court's denial of its motion to compel arbitration of the counterclaim asserted by the defendant, George C. Bowen, Jr. We reverse and remand.

Facts and Procedural History
In 1997, Bowen and Howard Eugene Womack formed a general partnership, B & W Farms, to operate a farm. In February of that year, SouthTrust made an installment loan in the amount of $250,453.50 and a revolving loan in the amount of $401,566.50 to Bowen, Womack, and B & W Farms. Several advances were made on the revolving loan until May 15, 1998, when the outstanding principal balance of that loan  approximately $244,905.70  was converted to a term loan. As part of the collateral for the term loan, Womack took out a mortgage on certain property in Houston County owned by his wife, Edna Womack, and his stepchildren, Cory Kelly and Casey Kelly Eiland ("the Womack-Kelly mortgage"). In executing the mortgage, it appears that SouthTrust allowed Womack to take the mortgage instrument to Edna, Corey, and Casey for their signatures. Womack then returned the mortgage instrument to SouthTrust, and a SouthTrust employee apparently notarized Edna's, Corey's, and Casey's signatures. It is alleged in the record that those signatures were forged.
On July 12, 2002, Bowen individually executed a promissory note with SouthTrust in the amount of $519,876.48. Bowen used part of the proceeds of the note to purchase all the previous loans made to him, Womack, and B & W Farms. Additionally, as part of that transaction, SouthTrust assigned the Womack-Kelly mortgage to Bowen. During this transaction, Bowen also executed a mortgage dated July 12, 2002, on his own property, with a maximum lien of $144,000 that served as security for the promissory note.
On May 8, 2003, Bowen executed another promissory note with SouthTrust in the amount of $47,200 and used the proceeds to obtain a release of certain judgment liens against property Womack owned. *627 This promissory note contained an arbitration provision; that provision stated, in part:
"I and [SouthTrust] agree that all disputes, claims and controversies between us whether individual, joint, or class in nature, arising from this Note or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon request of either party. . . . The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision."
On May 9, 2003, Edna, Cory, and Casey sued SouthTrust in the Houston Circuit Court, alleging that the Womack-Kelly mortgage was a fraudulent mortgage and that their purported signatures on the mortgage instrument were forgeries. They sought damages under various causes of action, including slander of title.
On June 20, 2003, Bowen and Millicent Bowen[1] executed a promissory note with SouthTrust in the amount of $46,885.68. The note contained an arbitration provision identical to the provision found in the May 8, 2003, note. On July 3, 2003, Bowen and Millicent subsequently executed a home-equity line-of-credit agreement ("the home-equity loan") with SouthTrust. The home-equity loan contained an arbitration provision, which stated, in part:
"You and we agree that all disputes, claims and controversies between us whether individual, joint, or class in nature, arising from this Agreement or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon request of either party. . . . The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision."
This home-equity loan was secured by a mortgage, which also contained an arbitration provision that stated, in pertinent part:
"Borrower and Grantor and Lender agree that all disputes, claims and controversies between us whether individual, joint, or class in nature, arising from this Mortgage or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon request of either party. . . . The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision."
SouthTrust alleges that the home-equity loan was to be used to pay for farm-supply expenses owed by B & W Farms.
On March 24, 2004, SouthTrust sued Bowen, Womack, and B & W Farms. The complaint alleged that Womack, acting on behalf of B & W Farms, fraudulently misrepresented that the signatures on the Womack-Kelly mortgage were genuine. The complaint alleged that as a result of Womack's misrepresentations, Edna, Cory, and Casey had sued SouthTrust for damages for slander of title and other claims. SouthTrust thus sought a judgment against Womack, Bowen, and B & W Farms for all sums it may be required to pay in the action filed by Edna, Cory, and Casey. The complaint also alleged that Bowen had failed to make payments on three of the notes: the July 12, 2002, note; the May 8, 2003, note; and the June 20, 2003, note. The complaint alleged that *628 Bowen still owed large sums on the notes, and it sought a judgment for the outstanding balances as well as interest and other costs.
Bowen and Womack each filed an answer.[2] Bowen's answer contained a counterclaim in which he alleged that SouthTrust had fraudulently represented to him that the Womack-Kelly mortgage was a valid mortgage when he entered into the July 12, 2002, note with SouthTrust and the Womack-Kelly mortgage was assigned to him. Bowen thus sought compensatory and punitive damages, alleging that the Womack-Kelly mortgage was worthless.
On June 9, 2004, SouthTrust filed a motion to compel Bowen to submit his counterclaim to arbitration and to stay further proceedings in the case pending the arbitration. Specifically, SouthTrust argued that arbitration provisions in the May 8, 2003, note; the June 20, 2003, note; the July 3, 2003, home-equity loan; and the July 3, 2003, mortgage required Bowen's counterclaim to be submitted to arbitration. SouthTrust's motion was supported by evidentiary exhibits, including affidavits of two SouthTrust Group vice presidents, C. Robert Whiddon and Heather Thornburgh. Bowen responded to the motion, and, after several continuances, the trial court held a hearing on the motion. The motion was denied on November 3, 2004. SouthTrust appeals.

Standard or Review
"`[T]he standard of review of a trial court's ruling on a motion to compel arbitration at the instance of either party is a de novo determination of whether the trial judge erred on a factual or legal issue to the substantial prejudice of the party seeking review.' Ex parte Roberson, 749 So.2d 441, 446 (Ala.1999). Furthermore:
"`A motion to compel arbitration is analogous to a motion for summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala.1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce. Id. "After a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question."'
"Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala.2000) (quoting Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala.1995) (emphasis omitted))."
Vann v. First Cmty. Credit Corp., 834 So.2d 751, 752-53 (Ala.2002).

Discussion

I.
The Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("the FAA"), "`mandates the arbitration of claims encompassed by an arbitration clause that is contained in a binding contract that involves interstate commerce.'" Allied Williams Cos. v. Davis, 901 So.2d 696, 699 (Ala.2004) (quoting Ex parte Conference America, Inc., 713 So.2d 953, 955 (Ala.1998)). Section 2 of the FAA provides, in pertinent part:
"A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising *629 out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
9 U.S.C. § 2.
SouthTrust submitted evidence of the existence of four contracts that called for arbitration. Thus, we must determine whether those contracts "involv[ed]" interstate commerce under the FAA. Bowen argues that the transaction in this case did not involve or affect interstate commerce because, he argues, there was no evidence indicating that Bowen was involved in any interstate business or that any of the debt was secured by any out-of-state "goods."
"In determining whether a transaction `involves' interstate commerce, this Court looks to whether Congress's Commerce Clause power can reach the activity that is the basis of the transaction:
"`The Supreme Court has acknowledged that the FAA is a constitutional exercise of Congress's Commerce Clause power. . . . [E]conomic or commercial transactions (such as, for example, the buying and selling of goods or services, contracting for employment, etc.), even one that is purely intrastate, are within the reach of the FAA if the "`general practice' those transactions represent" has, in the aggregate, a substantial effect on interstate commerce. Citizens Bank [v. Alafabco, Inc., 539 U.S. 52, 58 (2003)].
"` . . . In a very real sense, an argument that a transaction does not "involve" commerce under the FAA is actually an argument that Congress does not have the constitutional power under the Commerce Clause to reach and regulate that type of transaction. As the decisions of the United States Supreme Court have made clear, there are few, if any, economic or commercial transactions that are beyond the reach of Congress's commerce power. Furthermore, virtually every kind of industry, small or large, is currently regulated by some sort of federal statute enacted pursuant to Congress's commerce power. . . .
"`. . . .
"` . . . While there can be no per se rule that would preclude a trial court's role in evaluating whether a contract "evidenc[es] a transaction involving commerce," see [United States v.] Morrison [,529 U.S. 598, 614 (2000)], given the above, a trial court evaluating a contract connected to some economic or commercial activity would rarely, if ever, refuse to compel arbitration on the ground that the transactions lacked "involvement" in interstate commerce.'
"Service Corp. Int'l v. Fulmer, 883 So.2d 621, 627-29 (Ala.2003) (footnotes omitted).
"In deciding whether a contract calling for arbitration triggers the application of the FAA, this Court must determine whether the transaction `affected interstate commerce or if the economic activity in question represents a general practice subject to federal control. If either of these questions can be answered affirmatively, the FAA is triggered.' Huntsville Utils. v. Consolidated Constr. Co., 876 So.2d 450, 454-55 (Ala.2003)."
Allied Williams, 901 So.2d at 699 (footnote omitted).
Whiddon testified in his affidavit that, in arranging the home-equity loan and the mortgage that secured it, SouthTrust obtained a "flood certification" and a title policy from a Florida corporation. Additionally, SouthTrust obtained credit *630 reports from a Georgia corporation in connection with the May 8, 2003, and June 20, 2003, loans. Whiddon and Thornburgh both testified that, in connection with all its loans and mortgages, SouthTrust must comply with numerous federal regulations and is regulated by the Federal Deposit Insurance Corporation. Finally, SouthTrust does business and maintains branches in numerous states throughout the Southeast.
"`Banking and related financial activities are of profound local concern. . . . Nonetheless, it does not follow that these same activities lack important interstate attributes.'" Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 58, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003) (quoting Lewis v. BT Inv. Managers, Inc., 447 U.S. 27, 38-39, 100 S.Ct. 2009, 64 L.Ed.2d 702 (1980)). It appears from the evidence submitted that SouthTrust's lending is a "general practice subject to federal control." Moreover, the loans in this case required numerous activities that crossed state lines. Although Bowen states  without evidentiary support in the record[3]  that his business was solely an intrastate affair, we hold that SouthTrust presented substantial and unrebutted evidence of the requisite effect on interstate commerce.
Because SouthTrust proved the existence of contracts calling for arbitration and that those contracts evidenced transactions affecting interstate commerce, the burden shifted to Bowen to present evidence that the arbitration provisions were not valid or did not apply to the dispute in question. Vann, 834 So.2d at 752-53.

II.
Bowen argues that the arbitration provisions proffered by SouthTrust are found in contracts executed after the transaction at issue in his counterclaim  Bowen's acquisition of the Womack-Kelly mortgage. Bowen maintains that his counterclaim arose out of the July 12, 2002, transactions and that none of the contracts evidencing those transactions contain an arbitration provision. SouthTrust, on the other hand, argues that the language in the arbitration provisions in the subsequent contracts is broad enough to encompass Bowen's counterclaim.
"It is well established that `the interpretation of an arbitration agreement within the scope of the [FAA]' is governed by `general state-law principles of contract interpretation.' Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 475, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). `Agreements to arbitrate are essentially creatures of contract,' and ordinary contract rules govern the interpretation of arbitration provisions. Blount Int'l, Ltd. v. James River-Pennington, Inc., 618 So.2d 1344, 1346 (Ala. 1993). . . . "
Orkin Exterminating Co. v. Larkin, 857 So.2d 97, 103 (Ala.2003).
"The scope of the arbitration clause is a question of the intent of the parties." Larkin, 857 So.2d at 103. However,
"When a court interprets the language of an arbitration provision, `any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.' Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Thus, a motion to compel arbitration should not be denied `unless it may be said with positive assurance that the arbitration clause is not susceptible of an *631 interpretation that covers the asserted dispute.' United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)."
Ex parte Colquitt, 808 So.2d 1018, 1024 (Ala.2001). Because of the strong federal policy in favor of arbitration, this Court must "resolve any ambiguities as to the scope of the arbitration agreement in favor of arbitration." AmSouth Bank v. Dees, 847 So.2d 923, 933 (Ala.2002).
This Court has "compelled the arbitration of disputes arising out of a previous transaction when it was clear that the parties in a subsequently executed arbitration agreement intended to arbitrate such disputes based upon the broad scope of the arbitration clause at issue." Larkin, 857 So.2d at 103. In AmSouth Bank v. Dees, supra, the defendant, a bank, held a mortgage on the plaintiff's home. Subsequently, the plaintiffs entered into a line-of-credit agreement with the bank. The line-of-credit agreement contained an arbitration provision, which stated, in pertinent part: "`[A]ny controversy, claim, dispute, or disagreement arising out of, in connection with, or relating to this Agreement or your Loan shall be settled by arbitration. . . .'" 847 So.2d at 928. Later, the bank combined the debt owed on the prior mortgage with the debt owed on the line-of-credit agreement. The bank then charged the plaintiffs the interest rate applicable to the line of credit, which was significantly higher than the original interest rate on the mortgage.
This Court held that, given the broad language of the arbitration provision at issue and the factual link between the two transactions, the dispute regarding the previously executed mortgage, which contained no arbitration provision, was encompassed within the arbitration provision in the subsequently executed line-of-credit agreement. 847 So.2d at 936.
The evidence in this case demonstrates a factual link between the July 12, 2002, promissory notewhich gave rise to Bowen's counterclaim against SouthTrustand the subsequently executed agreements that contain arbitration provisions. C. Robert Whiddon, a SouthTrust Group vice president who, among other things, managed SouthTrust's "private banking department," stated in his affidavit in support of SouthTrust's motion to compel arbitration that he regularly dealt with Bowen, Womack, and B & W Farms and that he was familiar with them and their dealings with SouthTrust. Whiddon stated that because he was in charge of overseeing how funds were disbursed from SouthTrust, he was familiar with how Bowen, Womack, and B & W Farms used the funds they borrowed from SouthTrust. Whiddon testified that Bowen, Womack, and B & W Farms engaged in a series of related financial transactions with SouthTrust. Bowen requested that several existing promissory notes that Bowen, Womack, and B & W Farms had executed with SouthTrust be consolidated into what ultimately became the July 12, 2002, promissory note. According to Whiddon, B & W Farms owed a substantial debt to a farm-supply store in Dothan and funds advanced under the July 3, 2003, home-equity loan secured by the mortgagewere used to make payments on B & W Farms' debt to the farm-supply store. Whiddon further stated:
"The funds that Bowen, Womack and [B & W Farms] borrowed from [SouthTrust] during the series of financial transactions between them, including those funds obtained from the Home Equity Line Loan and the funds represented in the Promissory Note in the principal sum of $519,876.48, were utilized *632 principally for [B & W Farms'] farming operation or to pay debts and obligations associated with the partnership. The funds obtained from [SouthTrust] for [B & W Farms'] farming operation were used to purchase various items such as seed, chemicals and fuel for equipment related to the production of row crops."
Bowen's response to the motion to compel arbitration included no evidentiary exhibits disputing SouthTrust's evidence indicating that the various loans to Bowen were made to support B & W Farms' operations.
From the record before us, it appears that the July 12, 2002, promissory note the transaction through which Bowen was assigned the Womack-Kelly mortgage the May 8, 2003, note; the June 20, 2003, note; and the July 3, 2003, home-equity loan and mortgage were are all part of the series of loans and contracts over a number of years intended to provide funds to support the operations of B & W Farms. SouthTrust's evidence thus demonstrates a connection and relationship between the July 12, 2002, note-which gave rise to the legal action between SouthTrust and Bowen and which did not contain an arbitration provisionand the subsequently executed contracts between SouthTrust and Bowen that contain agreements to arbitrate.
The arbitration provisions at issue in the instant case are virtually identical, essentially reading as follows: "[SouthTrust and Bowen] agree that all disputes, claims and controversies between us . . . arising from this [contract] or otherwise . . . shall be arbitrated. . . ."
The word "otherwise" is defined as: "In a different manner; in another way, or in other ways." Black's Law Dictionary 1101 (6th ed.1990).[4] Thus, the arbitration provision could read: "[SouthTrust and Bowen] agree that all disputes, claims and controversies between us . . . arising from this [contract] or [in a different manner, in another way, or in other ways] . . . shall be arbitrated. . . ." The scope of such language is extremely broad, covering not only disputes between the parties that arise from the notes, but also disputes that arise in different manners in other ways.
Given the broad language of the arbitration provisions, the factual relationships between the loans in this case, and the strong policy requiring this Court to interpret the scope of an arbitration provision in favor of embracing arbitration, we cannot conclude "with positive assurance" that the arbitration provisions at issue in this case do not cover Bowen's counterclaim. Colquitt, 808 So.2d at 1024. Therefore, Bowen failed to meet his burden of establishing that the dispute in this case is not within the scope of the arbitration provisions.

III.
Bowen argues that, even if the arbitration provisions cover the dispute in this case, SouthTrust has waived its right to arbitration by substantially invoking the litigation process. We disagree.
"`It is well settled under Alabama law that a party may waive its right to arbitrate a dispute if it substantially invokes the litigation process and thereby substantially prejudices the party opposing arbitration. Whether a party's participation in an action amounts to an enforceable waiver of its right to arbitrate depends on whether the participation bespeaks an intention to abandon the right in favor of the judicial process, and, if so, whether the opposing party would be prejudiced by a subsequent order requiring *633 it to submit to arbitration. No rigid rule exists for determining what constitutes a waiver of the right to arbitrate; the determination as to whether there has been a waiver must, instead, be based on the particular facts of each case.'
"Companion Life Ins. Co. v. Whitesell Mfg., Inc., 670 So.2d 897, 899 (Ala.1995) (citations omitted). The courts will not lightly infer a waiver of the right to compel arbitration; thus, the burden on the party seeking to prove waiver is a heavy one."
U.S. Pipe & Foundry Co. v. Curren, 779 So.2d 1171, 1174 (Ala.2000) (emphasis added). Additionally, as this Court has consistently noted: "[T]here is a presumption against a court's finding that a party has waived the right to compel arbitration." Eastern Dredging & Constr., Inc. v. Parliament House, L.L.C., 698 So.2d 102, 103 (Ala.1997). See also Conseco Fin. Corp.-Alabama v. Salter, 846 So.2d 1077, 1080 (Ala.2002) ("We note that a presumption exists against a finding that a party has waived the right to compel arbitration."); Blue Ribbon Homes Super Ctr., Inc. v. Bell, 821 So.2d 186, 191 (Ala.2001) ("We note that there is a presumption against finding that a party has waived the right to compel arbitration."); Zedot Constr., Inc. v. Red Sullivan's Conditioned Air Servs., Inc., 947 So.2d 396, 399 (Ala.2006); Blue Cross Blue Shield of Alabama v. Rigas, 923 So.2d 1077, 1093 (Ala.2005); and Lee v. YES of Russellville, Inc., 784 So.2d 1022, 1028 (Ala.2000).
In order to demonstrate that the right to arbitrate a dispute has been waived, the party opposing arbitration must demonstrate both (1) that the party seeking arbitration substantially invoked the litigation process, and (2) that the party opposing arbitration would be substantially prejudiced by an order requiring it to submit to arbitration. Curren, 779 So.2d at 1174; Companion Life Ins. Co. v. Whitesell Mfg., Inc., 670 So.2d 897, 899 (Ala.1995). Bowen's opposition to the motion to compel arbitration was not supported by an affidavit, and it failed to present any evidence demonstrating that Bowen would be prejudiced if, at this point in the proceedings, he were compelled to arbitrate his counterclaim. SouthTrust filed its motion to compel arbitration within three months of filing the complaint, and it does not appear from the materials before this Court that any discovery has taken place. Because Bowen presented no evidence proving he would be substantially prejudiced, he has failed to meet his "heavy burden" in demonstrating that SouthTrust waived its right to arbitration.[5] Cf. Ex parte Greenstreet, Inc., 806 So.2d 1203, 1209 (Ala.2001) ("If [a] party presents no evidence in opposition to a properly supported motion to compel arbitration, then the trial court should grant the motion to compel arbitration.").

Conclusion
The trial court erred in denying the motion to compel arbitration. Therefore, the trial court's order denying the motion to compel arbitration is reversed, and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
LYONS, HARWOOD, WOODALL, STUART, and BOLIN, JJ., concur.
SEE, J., concurs specially.
PARKER, J., concurs in part and dissents in part.
*634 SEE, Justice (concurring specially).
I agree with the majority's conclusion that the agreements under discussion implicate the Federal Arbitration Act; that the arbitration provisions that George C. Bowen, Jr., signed require him to submit his counterclaim to arbitration; and that SouthTrust Bank has not waived its right to demand arbitration of Bowen's counterclaim. I write separately simply to note that the broad scope of the language in these arbitration provisions encompasses all disputes that might arise between Bowen and SouthTrust, whether based on these agreements "or otherwise." Thus, although I believe that the discussion of the factual link between the first agreement and the subsequent agreements is helpful in demonstrating that the arbitration provisions encompass the dispute, I do not believe that it is necessary to the discussion. See Orkin Exterminating Co. v. Larkin, 857 So.2d 97, 103 (Ala.2003) ("[W]e have compelled the arbitration of disputes arising out of a previous transaction when it was clear that the parties in a subsequently executed arbitration agreement intended to arbitrate such disputes based upon the broad scope of the arbitration clause at issue."); Kenworth of Dothan, Inc. v. Bruner-Wells Trucking, Inc., 745 So.2d 271, 276 (Ala.1999) ("[I]f the arbitration clause contains language stating that it applies to `all transactions between us' or `all business with us,' then we may apply the arbitration clause retroactively.").
PARKER, Justice (concurring in part and dissenting in part).
I concur in parts I and III of the "Discussion" section of the majority opinion. I respectfully dissent as to part II, in which the majority errs by treating AmSouth Bank v. Dees, 847 So.2d 923 (Ala.2002), as logically analogous to the instant case. It is not.
In Dees, an initial mortgage transaction, which had no arbitration provision associated with it, was followed by a line-of-credit transaction, which did include an arbitration provision. The debt from the two transactions was combined in a third transaction, and the interest rate applicable to the line of credit was applied to the combined debt. Under the circumstances, this Court held that the arbitration provision in the line-of-credit agreement applied to the combined debt.
There is no such combination of transactions in this case. Instead, the closest the July 12, 2002, promissory note, which contains no arbitration provision, and the subsequent agreements, which contain arbitration provisions, come is that the proceeds from the separate agreements were used for similar purposes. This level of "factual link," as the majority opinion describes it, is very tenuous and not logically analogous to the facts of Dees, which, therefore, cannot be properly treated as dispositive of the issue in this case.
NOTES
[1] The record and briefs do not identify Millicent's relationship to Bowen.
[2] Womack eventually filed a petition in bankruptcy; he is not a party to this appeal.
[3] In response to the motion to compel arbitration, Bowen submitted no evidence indicating that the transactions in this case did not affect interstate commerce.
[4] The current edition of Black's Law Dictionary has no entry for the word "otherwise."
[5] Because we hold that Bowen failed to demonstrate that he would be substantially prejudiced by an order requiring him to submit to arbitration, we need not address whether SouthTrust substantially invoked the litigation process.