[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 9, 2008
THOMAS K. KAHN
CLERK

No. 08-10343
Non-Argument Calendar

_____

D. C. Docket No. 05-03163-CV-JEC-1

DEBORAH E. ANDREWS-WILLMANN,

Plaintiff-Appellant,

versus

HENRY M. PAULSON, JR.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(July 9, 2008)**

Before BLACK, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Deborah Andrews-Willmann, proceeding pro se, appeals the district court's

order granting summary judgment to the Secretary of Treasury Henry J. Paulson, Jr. (the "government") in her pro se employment action for retaliatory failure to promote and other retaliatory conduct brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. After review, we affirm.

## I. BACKGROUND

From 1986 until she retired in October 2005, Andrews-Willmann was employed by the Internal Revenue Service ("IRS").

### A. Prior Complaints in 1996 and 1997

In December 1995, Andrews-Willmann returned from a medical leave with her psychiatrist's note, stating that Andrews-Willmann had been treated for depression and anxiety and needed to be placed in a less stressful position with less frequent public contact. In response, in January 1996, Andrews-Willmann's immediate supervisor, Josephine Davis, instructed her to complete a statement requesting a voluntary downgrade from a GS-7 to a clerical GS-4 position for health reasons. Andrews-Willmann complied and was placed in a mail clerk position.

Between 1996 and 1997, Andrews-Willmann filed three internal complaints of employment discrimination with the Treasury Department's Equal Employment Opportunity program ("EEO"), alleging that she had suffered disability

2

discrimination by being demoted, as well as harassment and retaliation. The complaints involved Carol Meyers, Andrews-Willmann's third level supervisor and were not resolved in Andrews-Willmann's favor. One complaint was the basis of Andrews-Willmann's prior federal lawsuit, which she lost on summary judgment in 2001.

## B.    Alleged Retaliatory Conduct in 2003 to 2005

From January 2003 until July 7, 2004, Andrews-Willmann was on leave from work, first due to the birth of her twins and later because she developed carpal tunnel syndrome.[1]  In February 2003, while on leave, Andrews-Willmann sought a hardship transfer from the IRS's Chamblee, Georgia office to an office in downtown Atlanta for family reasons relating primarily to the care of her children. Andrews-Willmann's second level supervisor, Peggy Sue Unander, denied this request. In August 2003, while Andrews-Willmann was preparing a second hardship transfer request, she contacted the IRS's personnel office for assistance. Afterward, Andrews-Willmann's immediate supervisor, Davis, called her at home and in a threatening tone accused her of "causing grief in Personnel . . . ."

---

[1]In January 2003 Andrews-Willmann was placed on bed rest during her pregnancy. After her twins were born in February 2003, Andrews-Willmann used some accrued annual leave and twelve weeks of maternity leave. In May 2003, when her paid leave was exhausted, Andrews-Willmann took leave without pay while she sought treatment for numb hands. After she received a carpal tunnel syndrome diagnosis in October 2003, Andrews-Willmann obtained worker's compensation benefits retroactive to July 2003 and was placed on partial paid leave.

Andrews-Willmann's second hardship transfer request was approved. However, Andrews-Willmann was not transferred to the downtown Atlanta office because she was only eligible for a transfer to a position with a GS-4 or lower grade and there were no openings for such a position. Later, after her husband obtained a job in Columbus, Georgia, Andrews-Willmann changed her hardship transfer request to three other IRS offices closer to Columbus. However, Andrews-Williams was not transferred to these locations because they also did not have GS-4 or lower grade openings.

In December 2003, Andrews-Willmann was diagnosed with carpal tunnel syndrome and placed on worker's compensation leave. Andrews-Willmann received orders from her doctor not to work with a keyboard or to perform extensive work with her hands. As part of her effort to obtain light duty work, Andrews-Willmann faxed her doctor's work restrictions to Davis. In response, Davis called Andrews-Willmann and repeatedly asked her, "Just what is it you can't do?" Davis posed this question in a nasty tone of voice, which suggested to Andrews-Williams that Davis thought there was nothing wrong with Andrews-Willmann.

On January 5, 2004, Andrews-Willmann was scheduled to return to work. Instead, Andrews-Willmann called Davis and indicated that her children were sick

4

and needed to see the doctor. During this call, Davis threatened to "give [Andrews-Willmann] AWOL," unless Andrews-Willmann provided documentation from her children's doctor. The next day, Andrews-Willmann provided Davis with the requested documentation, and Andrews-Willmann was not charged with being absent without leave.

During this same conversation, Davis also told Andrews-Willmann that she would not provide Davis with a written offer for light duty work. Davis was unfamiliar with the process for returning an employee to work from a worker's compensation claim and believed she was not required to provide Andrews-Willmann with a written offer for light duty work. After inquiring with the worker's compensation office, however, Davis prepared a written offer a few days later, on January 16, 2004. According to Andrews-Willmann, this written offer, as well as several other revised offers, did not contain all the work restrictions required by Andrews-Willmann's doctor. While the IRS and Andrews-Willmann negotiated over the wording of the written offer, the IRS repeatedly extended Andrews-Willmann's time to report to work.

In March 2004, Andrews-Willmann received an acceptable written offer for light duty work. However, Andrews-Willmann underwent surgery for her carpal tunnel syndrome in late March 2004 and again in June 2004 and was unable to

report to work until July 2004. Andrews-Willmann returned to work on July 7, 2004 in her previous clerk position, performing only light duty tasks. Andrews-Willmann retired in October 2005.

**C.    EEO Investigation of 2004 Complaint**

On March 27, 2004, Andrews-Willmann filed a formal EEO complaint with the Treasury Department. Based on a review of Andrews-Willmann's complaint, the agency identified in a letter claims of "harassment on the bases of her physical disability (Aggravated Bilateral Carpel [sic] Tunnel Syndrome) and/or retaliation for prior EEO complaint activity" and listed the following five activities for investigation: (1) Davis's accusing Andrews-Willmann of causing the personnel department grief; (2) the IRS's refusal to help Andrews-Willmann locate a position in Columbus, Georgia after her hardship transfer request was granted; (3) Davis's asking Andrews-Willmann "Just what is it you can't do"; (4) Davis's statement to Andrews-Willmann that the IRS would not provide her with a light duty job offer; and (5) Davis's threat to classify Andrews-Willmann as AWOL if she failed to submit medical documentation for her physical disability of carpal tunnel syndrome. The agency gave Andrews-Willmann fifteen days to notify the agency if she disagreed with the claims listed in the letter. There is no evidence in the record that Andrews-Willmann objected to the claims as identified in the letter.

The EEO investigator interviewed and obtained sworn statements from

6

Andrews-Willmann, her immediate supervisor Davis, her second line supervisor Unander and her third line supervisor Myers. The agency gave Andrews-Willmann a copy of the EEO investigative file because it contained sufficient information for the agency to make a decision on her complaint. The agency informed Andrews-Willmann that she could request within fifteen days that the investigative file be supplemented and that the decision to supplement the record rested with the Complaint Center Director.

In response, on October 5, 2004, Andrews-Willmann sent a letter to the agency stating that the investigative file contained "nothing or very little documentation substantiating [Andrews-Willmann's] statements" and requested that the agency obtain statements from ten witnesses, including various IRS and Office of Worker's Compensation employees. Andrews-Willmann attached a signed, unsworn statement from her husband.

On October 29, 2004, the agency informed Andrews-Willmann that it would not obtain the requested statements. The agency noted that Andrews-Willmann had not indicated what involvement or information the listed individuals could provide related to her claims.

Following the investigation, the agency found no discrimination. On September 15, 2005, the EEOC affirmed the agency's determination and issued a right to sue letter.

**D.      District Court Proceedings**

Andrews-Willmann timely filed this pro se action in federal court.

Andrews-Willmann's complaint alleges, among other things, that in retaliation for

her EEO complaints in 1996 and 1997, her supervisors Davis, Unander and Myers

harassed and failed to promote her.[2]  The government moved for summary

judgment.

The magistrate judge's report ("R&R") recommended granting the

government's motion, concluding, inter alia, that Andrews-Willmann had failed to

exhaust her retaliatory failure-to-promote claim in administrative proceedings and

had not shown a causal connection between her 1996 and 1997 EEO complaints

and the alleged retaliatory harassment by her supervisors in 2003 and 2004.

The district court overruled Andrews-Willmann's objections to the R&R,

adopted the R&R in its entirety and granted summary judgment to the government.

Andrews-Willmann filed this appeal.

## II.  DISCUSSION[3]

---

[2]Andrews-Willmann's complaint also alleged a claim under the Family and Medical Leave Act ("FMLA"), which she does not pursue on appeal.  In addition, the district court concluded that Andrews-Willmann's complaint did not include claims for constructive discharge or disability discrimination and that her attempt to assert a retaliation claim for her 1996 demotion was barred by the doctrine of res judicata.  Andrews-Willman does not challenge these rulings on appeal.  The only claims on appeal are for retaliatory failure to promote and retaliatory harassment.

[3]We review de novo the district court's grant of summary judgment, viewing all evidence and all reasonable factual inferences in the light most favorable to the non-moving party.  Rioux v. City of Atlanta, 520 F.3d 1269, 1274 (11th Cir. 2008).

## A. Retaliatory Failure-to-Promote Claim

Before filing a Title VII action, a federal employee must exhaust her administrative remedies. Crawford v. Babbitt, 186 F.3d 1322, 1326 (11th Cir. 1999); 42 U.S.C. § 2000e-16(c). A plaintiff's subsequently filed civil action is limited by the scope of the administrative investigation that "can reasonably be expected to grow out of the charge of discrimination." Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1280 (11th Cir. 2004) (quotation marks omitted). The purpose of the exhaustion requirement is "to give the agency the information it needs to investigate and resolve the dispute between the employee and the employer." Brown v. Snow, 440 F.3d 1259, 1263 (11th Cir. 2006) (quotation marks omitted). In evaluating whether an employee exhausted administrative remedies, "we consider whether the complainant made a good faith effort to comply with the regulations and, particularly, to provide all the relevant, specific information available to him or her." Id. (quotation marks omitted)

Under the applicable regulations, to exhaust her administrative remedies, a federal employee must first consult with an EEO counselor within 45 days of the alleged discriminatory act to see if the matter can be informally resolved. 29 C.F.R. § 1614.105. If the matter cannot be resolved informally, the employee must file a formal complaint with the agency. See id. § 1614.106(a). The complaint must contain a signed statement from the employee that is "sufficiently precise . . .

9

to describe generally the action(s) or practice(s) that form the basis of the complaint." Id. § 1614.106(c).

A review of Andrews-Willmann's EEO documentation reflects that Andrews-Willmann did not provide relevant, specific information to the Treasury Department indicating that she had been passed over for promotion in retaliation for her prior EEO complaints. The only reference Andrews-Willmann made at the administrative level to promotions appeared in a May 6, 2004 handwritten clarification of her EEO complaint. In the clarification, Andrews-Willmann stated that she had not received any interviews for GS-7 grade positions since her demotion in 1996, despite the fact that she had a Masters degree and was qualified for GS-9 grade positions. However, this one sentence, devoid of any information regarding specific positions or promotional opportunities, was insufficient to put the government on notice of a failure-to-promote claim.

Furthermore, during the administrative process, the Treasury Department identified from Andrews-Willmann's complaint five alleged retaliatory acts of harassment, none of which involved a failure to promote. Andrews-Willmann was given an opportunity to object to the claims identified, but did not.

Because Andrews-Willmann failed to present a retaliatory failure-to-promote claim in her EEO complaint, the agency did not investigate or develop a factual record on such a claim. Accordingly, the district court did not err in

10

concluding that Andrews-Willmann failed to exhaust her failure-to-promote claim.

## B.      Retaliatory Harassment Claim

"To establish a prima facie showing of retaliation under Title VII, the plaintiff must show (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that there is some causal relation between the two events." Cooper v. Southern Co., 390 F.3d 695, 740 (11th Cir. 2004), overruled on other grounds, Ash v. Tyson Foods, Inc., 546 U.S. 454, 457, 126 S. Ct. 1195, 1197 (2006) (quotation marks omitted).[4]

With respect to the third prong, "[t]o establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct and that the protected activity and the adverse action were not wholly unrelated." Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 590 (11th Cir. 2000) (quotation marks and brackets omitted). "For purposes of a prima facie case, 'close temporal proximity' may be sufficient to show that the protected activity and the adverse action were not 'wholly unrelated.'" Id.   However, "mere temporal proximity,

---

[4]The district court alternatively analyzed Andrews-Willmann's claim as a hostile work environment claim.  However, while Andrews-Willmann alleged that she suffered harassment and a hostile work environment, she did not allege that this harassment was based on a protected characteristic, such as her race or gender, but rather alleged that it was in response to her EEO activity.  Thus, we construe Andrews-Willmann's claim as a retaliation claim brought pursuant to 42 U.S.C. § 2000e-3(a), and analyze it under a retaliation framework.

Further, there are threshold questions  whether a plaintiff can even bring a "retaliatory harassment claim" and, if so, whether the kind of harassment Andrews-Willmann alleges can constitute an actionable adverse employment action.  However, we need not address these issues because Andrews-Willmann's claim fails on the causation prong of the prima facie case.

11

without more, must be 'very close.'" Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) (quoting Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S. Ct. 1508, 1511 (2001)). "A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough." Id. (citing Breeden, 532 U.S. at 273, 121 S. Ct. at 1511); accord Higdon v. Jackson, 393 F.3d 1211, 1221 (11th Cir. 2004); Wascura v. City of South Miami, 257 F.3d 1238, 1248 (11th Cir. 2001).

Here, it is undisputed that Andrews-Willmann filed her EEO complaints in 1996 and 1997 and that the five incidents of alleged retaliatory harassment occurred in 2003 and 2004. This expanse of time–at least six years–between the protected activity and the harassing conduct is patently too great to permit an inference of causation. Furthermore, there is no other evidence in the record to suggest that the five alleged incidents of harassment were due to Andrews-Willmann's prior EEO activity or even that any of her supervisors were aware of her prior EEO complaints.

Andrews-Willmann argues that the district court erred in considering only the five incidents identified during the administrative proceedings and urges us to consider her 1996 demotion and 2005 constructive discharge as evidence of retaliatory harassment. However, Andrews-Willmann's 1996 demotion occurred before she filed her first EEO complaint (and in fact was the subject of that

12

complaint) and thus cannot be evidence of post-complaint retaliation. As for her 2005 departure from the IRS, Andrews-Willmann's complaint alleged that she retired voluntarily. Furthermore, there is no evidence that any of the alleged conduct that she claims led to her retirement was the result of her prior EEO complaints. Thus, the district court properly granted summary judgment to the government on Andrews-Willmann's retaliatory harassment claim.

## C.    EEO Investigative File

We also reject Andrews-Willmann's argument that the district court erred in permitting the government to offer evidence from the EEO investigative file.[5]

A federal agency conducting an EEO program is required to "develop an impartial and appropriate factual record upon which to make findings on the claims raised by the written complaint." 29 C.F.R. § 1614.108(b). EEOC reports and determinations are generally admissible under the public records and reports exception to the hearsay rule in Federal Rule of Evidence 803(8)(C) "'unless the sources of information or other circumstances indicate lack of trustworthiness.'" Barfield v. Orange County, 911 F.2d 644, 650-51 (11th Cir. 1990).

Andrews-Willmann does not identify any specific inaccuracies in her investigative file and offers no concrete examples of improper bias. In any event,

---

[5]A district court's evidentiary rulings are reviewed for abuse of discretion. City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 556 (11th Cir. 1998).

while Andrews-Willmann did request that the EEO investigator interview additional individuals, this request was denied because she failed to explain why the particular individuals would have relevant, firsthand information. Andrews-Willmann does not challenge the agency's reason for denying her request and has never explained what relevant information those individuals might possess. Furthermore, there is no indication in the record that Andrews-Willmann attempted to secure corroborating statements on her own, despite her obligation to do so to avoid summary judgment. See Fed. R. Civ. P. 56(e)(2).

Under the circumstances, we cannot say that the district court erred in admitting this evidence.

### III.  CONCLUSION

For all the forgoing reasons, we affirm the district court's order granting summary judgment to the government.[6]

**AFFIRMED.**

---

[6]Because we affirm the district court's grant of summary judgment to the government on the merits, it is unnecessary to address the district court's denial of Andrews-Willmann's cross-motion for summary judgment for failure to comply with the local rules.