**Marie KING, Plaintiff,**

v.

**CINTAS CORPORATION, Defendant.**

**Case No. 12–CV–4078–VEH.**

United States District Court,
N.D. Alabama,
Southern Division.

Feb. 5, 2013.

---

Daniel E. Arciniegas, Jon C. Goldfarb, L. William Smith, Wiggins Childs Quinn & Pantazis LLC, Birmingham, AL, for Plaintiff.

J. Russell Campbell, Brentley Tyler Cobb, Balch & Bingham LLP, Birmingham, AL, for Defendant.

### MEMORANDUM OPINION AND ORDER

VIRGINIA EMERSON HOPKINS, District Judge.

Before the court is a Motion to Compel Arbitration (Doc. 7) filed by Defendant

Cintas Corporation ("Cintas") on January 3, 2013. The court has also considered the arguments made by Plaintiff Marie King ("Ms. King") in her Response (Doc. 9) and by Cintas in its Reply (Doc. 10). The parties have fully briefed the motion, and thus it is ripe for consideration. For the following reasons, Cintas's Motion is **GRANTED.** The court will stay proceedings while the matter is pending arbitration.

## I. Statement of the Case

The following basic facts, listed in the Complaint, are uncontested by Cintas and therefore assumed to be true for the purposes of this motion. Cintas hired Ms. King on May 27, 2010, as a Management Trainee. (Doc. 1 ¶ 6). On March 2, 2011, Ms. King learned that she was pregnant and was due to give birth on October 22, 2011. (*Id.* ¶ 12). On or around March 7, 2011, Ms. King informed her superiors at the company of her pregnancy and the due date. (*Id.* ¶ 13). While Ms. King had at that point been riding with drivers and learning how to handle catalogue sales, her manager re-assigned her to sanitation duties. (*Id.* ¶ 14–15). Later, Ms. King submitted a doctor's note to her superiors stating that she could not continue working on sanitation duties because it involved exposure to harmful chemicals. (*Id.* ¶ 19). In approximately May 2011, the company placed Ms. King in an office position. (*Id.* ¶ 20). Around July 2011, Ms. King requested leave under the Family Medical Leave Act ("FMLA") and a Short–Term Disability Notification Form due to her pregnancy. (*Id.* ¶ 22). On August 25, 2011, Cintas discharged Ms. King. (*Id.* ¶ 24). Ms. King later applied for several advertised positions at the company, but she was not hired. (*Id.* ¶ 32).

Ms. King filed a Complaint (Doc. 1) against Cintas on December 11, 2012. The Complaint alleged (1) sex/pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964, (2) illegal retaliation under Title VII, (3) illegal interference and retaliation under the FMLA; (4) and deprivation of rights under the Fair Labor Standards Act ("FLSA"). (*Id.* ¶ 36–59). It sought declaratory judgment, permanent injunctive relief, compensatory and punitive damages, costs, expenses, and attorneys' fees. (*Id.* at 11–12).

On January 3, 2013, Cintas filed the present Motion to Compel Arbitration (Doc. 7). It pointed to Section 8 of the Employment Agreement signed by Ms. King and Cintas on May 27, 2010, which identified arbitration as the exclusive method for resolving disputes or differences between the parties regarding "rights or claims *arising out of or in any way related to* Employee's employment with Employer." (Doc. 7 at 4–5) (emphasis added). Ms. King filed a Response (Doc. 9) in opposition on January 17, 2013. She conceded that arbitration was the proper forum to resolve her claims of pregnancy/sex discrimination, FMLA interference and retaliatory discharge, and FLSA wage deprivation. (*Id.* at 2). However, she maintained that the arbitration provision did not cover her "post-termination" claims of retaliation under Title VII and the FMLA, which concerned Cintas's failure to hire her for any of the positions to which she had applied. (*Id.*). Cintas filed a Reply (Doc. 10) on January 24, 2013. It argued that (1) the arbitration provision of the Employment Agreement covered any and all claims that arose between the parties, and (2) even if the provision applied only to claims related to Ms. King's employment, her "post-termination" claims are sufficiently related to her previous employment to render them arbitrable. (*Id.* at 2–7).

## II. Standard of Review

■ The Federal Arbitration Act, 9 U.S.C. §§ 1–307 (2006 & Supp. V 2011)

(FAA), embodies a "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), *superseded by statute on other grounds,* 9 U.S.C. § 16(b)(1). Thus "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 24–25, 103 S.Ct. 927.

■ Where the parties dispute the applicability or scope of an arbitration agreement, the issue is for the district court to determine.

It is well settled in both commercial and labor cases that whether parties have agreed to submit a particular dispute to arbitration is typically an issue for judicial determination. It is similarly well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide. . . .

A court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute.* To satisfy itself that such agreement exists, the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce. Where there is no provision validly committing them to an arbitrator, these issues typically concern the scope of the arbitration clause and its enforceability. In addition, these issues always include whether the clause was agreed to, and may include when that agreement was formed.

*Granite Rock Co. v. Int'l Brotherhood of Teamsters,* —— U.S. ——, 130 S.Ct. 2847, 2855, 177 L.Ed.2d 567 (2010) (internal citations and quotation marks omitted) (emphasis in original).

The Eleventh Circuit has recently explained the district court's role under *Granite Rock* as follows:

[Under *Granite Rock* ] the district court must first resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce. In other words, arbitration of a dispute should only be ordered where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* its enforceability or applicability to the dispute is in issue. Where a party contests either or both matters, the court must resolve the disagreement.

*Solymar Inv., Ltd. v. Banco Santander S.A.,* 672 F.3d 981, 990 (11th Cir.2012) (internal citations and quotation marks omitted) (emphasis in original).

■ Whether a party has agreed to arbitrate an issue is a matter of contract interpretation. *Telecom Italia, SpA v. Wholesale Telecom Corp.,* 248 F.3d 1109, 1114 (11th Cir.2001) (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). Under the FAA, parties are generally free to structure their arbitration agreements as they see fit. *Volt Infor. Sci., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.,* 489 U.S. 468, 478–79, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). "A court can decline to enforce an arbitration agreement under the FAA only if the plaintiffs can point to a generally applicable principle of *contract* law under which the agreement could be revoked." *Caley v. Gulfstream Aerospace Corp.,* 428 F.3d 1359, 1371 (11th Cir.2005) (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 627, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)) (emphasis in original); *see also Doctor's Assoc., Inc. v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (

[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements.) (citations omitted).

 In determining whether parties have agreed to arbitrate a particular dispute, courts consider: (1) whether there is a valid agreement to arbitrate, and (2) whether the dispute in question falls within the scope of that agreement. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir.1996) (citations omitted). To resolve these questions, courts apply state-law principles relating to ordinary contract formation and interpretation, construed through the lens of the federal policy favoring arbitration. *See Caley*, 428 F.3d at 1368 (State law generally governs whether an enforceable contract or agreement to arbitrate exists.) (citing *Perry v. Thomas*, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)). If a court finds the parties did agree to arbitrate, it must finally consider "whether legal constraints external to the parties' agreement foreclose[ ] the arbitration of those claims." *Mitsubishi*, 473 U.S. at 628, 105 S.Ct. 3346.

 Under Alabama law, arbitration provisions are to be treated like any other contractual provision. *Service Corp. Int'l v. Fulmer*, 883 So.2d 621, 633 n. 15 (Ala. 2003) (citing *Casarotto*, 517 U.S. at 687, 116 S.Ct. 1652). In that regard, a party seeking to compel arbitration must prove (1) the existence of a contract containing an arbitration agreement and (2) that the underlying contract evidences a transaction affecting interstate commerce. *Allied Williams Co., Inc. v. Davis*, 901 So.2d 696, 698 (Ala.2004) (citation omitted). Once the party makes such a showing, the burden shifts to the opposing party to present evidence that the arbitration agreement is not valid or that it does not apply to the dispute in question. *Id.* (citation omitted).

## III. Analysis

Ms. King does not dispute that the Employment Agreement ("the Agreement") signed by her and Cintas on May 27, 2010, was a valid contract or that it affected interstate commerce. (*See* Doc. 9). Indeed, she admits that the Agreement forces her into arbitration to resolve her claims regarding Cintas's conduct *during* her employment, including her termination from the company. (*Id.* at 2). She argues, however, that the Agreement does not apply to her retaliation claims, which relate to Cintas's failure to re-hire her *after* her termination. (*Id.* at 2–7).

The Eleventh Circuit has recently observed that circuit courts have not provided unified authority on the scope of arbitration clauses. *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Inv.*, 553 F.3d 1351, 1366 (11th Cir.2008) (citing *Telecom Italia*, 248 F.3d at 1114). Courts instead have variably described the required nexus between underlying disputes and arbitration clauses. *Id.* These include: "whether the tort or breach in question was an immediate, foreseeable result of the performance of contractual duties," *Telecom Italia*, 248 F.3d at 1116; *see also Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH*, 585 F.2d 39, 46 (3d Cir.1978) ("[W]here the parties have foreseen and provided for a process for renewing their agreement, a dispute such as this one relating to renewal 'arises out of' the agreement and is therefore clearly within the scope of the arbitration clause."); whether "an action could be maintained without reference to the contract or relationship at issue," *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir.2003); whether the disputes have "their origin or genesis in the contract," *Sweet Dreams Unlimited, Inc. v. Dial–A–Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir.1993); or whether "the allegations underlying the

claims touch matters covered by the" contract, *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 846 (2d Cir.1987) (internal quotation marks omitted).

Likewise, the Eleventh Circuit has not issued controlling authority that precisely fits the details of this case. But, it has published several opinions interpreting arbitration clauses that are similar to the clause at issue, and the decisions are instructive here. *Telecom Italia* was a convoluted case in which a telecommunications company sued a reseller of such services for breach of a leasing contract they had formed several years beforehand. 248 F.3d at 1111–13. The reseller both counterclaimed for breach of contract and asserted a third-party complaint against the company's subsidiary, with whom the reseller had formed a separate contract. *Id.* The reseller alleged that the subsidiary had tortiously interfered with the original contract between the reseller and the subsidiary's parent company. *Id.* The subsidiary argued that the reseller's third-party tort claim fell under the terms of an arbitration clause in the contract between the reseller and the parent company. *Id.* The clause required arbitration "in the event of any dispute arising out of or relating to this service agreement." *Id.* The district court had ruled that the third-party complaint was not subject to the arbitration clause, and the subsidiary appealed the ruling interlocutorily. *Id.*

The Eleventh Circuit affirmed the district court's ruling. *Id.* at 1111. It determined that the relevant question in such cases was "whether the tort of breach in question was an *immediate, foreseeable result* of the performance of contractual duties." *Id.* at 1116 (emphasis added). That is, the arbitrability of a dispute would be decided by whether it "occurs as a *fairly direct result* of the performance of contractual duties." *Id.* (emphasis added). Applying this formula to the facts, the court inferred that no part of the contract between the subsidiary and the reseller was "designed to, expected to, or likely to" exert pressure on the parent company to breach its lease with the reseller. *Id.* Such disputes that "are not related—with at least some directness—to performance of duties specified by the contract do not count as disputes 'arising out of' the contract." *Id.* The Eleventh Circuit has since adopted this paradigm in later cases. *See Hemispherx*, 553 F.3d at 1367–69 ("We have previously focused on foreseeability as proper standard for resolving the scope of an arbitration clause that covers disputes 'arising out of or pursuant to' the contract between the parties.") (citing *Telecom Italia*, 248 F.3d at 1116); *see also Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218–21 (11th Cir.2011) (holding that claims of false imprisonment, intentional infliction of emotional distress, spoliation of evidence, invasion of privacy, and fraudulent misrepresentation were outside scope of arbitration clause in employment agreement between cruise line and crewmember who claimed she was drugged and raped by fellow crewmembers) (citing *Telecom Italia*, 248 F.3d at 1116).

Both parties here identify *Neely v. Bechtel Corp.*, No. 1:07–cv–0907–WKW [wo], 2008 WL 2120085 (M.D.Ala. May 20, 2008), as persuasive authority in resolving this case. The court agrees. *Neely* involved a complaint by a discharged employee (Neely) against his former corporate employer (Bechtel). *Neely*, 2008 WL 2120085, at *1. Neely had originally complained to the Equal Employment Opportunity Commission ("EEOC") that his termination from the company prejudicially resulted from his age and disability. *Id.* That claim was dismissed. *Id.* He later claimed that, after his discharge, Bechtel declined to re-hire him to thirty-five different jobs on the same impermissible grounds. *Id.* He also said that Bechtel did

so in retaliation for his filing his original complaint with the EEOC. *Id.* After showing that Neely had signed an agreement consenting to the company's dispute resolution program when he joined the company, Bechtel moved to compel arbitration and to stay the court proceedings. *Id.* The arbitration clause stated that Neely consented to the program being "the exclusive means of resolving all disputes, claims or controversies ... *which arise out of or relate to* [his] employment (or its termination)." *Id.* (emphasis added).

In considering Bechtel's motion, the court distinguished Neely's failure-to-hire claims from his retaliation claims. *Id.* at *2–4. After considering the prima facie elements of each claim, it decided that the former were not subject to arbitration, while the latter were. *Id.* As recognized in *Neely,* the *prima facie* elements of a failure-to-hire claim are that: (1) the plaintiff is a member of a protected class, (2) she applied for and was qualified for an available position, (3) she was rejected for the position, and (4) the employer filled the position with a person outside of her protected class. *Id.* at *2 (citing *Walker v. Prudential Prop. & Cas. Ins. Co.,* 286 F.3d 1270, 1274–75 (11th Cir.2002)). The *prima facie* elements of a retaliation claim are: (1) the plaintiff engaged in statutorily-protected expression, (2) she suffered adverse employment action, and (3) there is some causal relation between the two events.

*Id.* at *4 (citing *Cooper v. Southern Co.,* 390 F.3d 695, 740 (11th Cir.2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.,* 546 U.S. 454, 457, 126 S.Ct. 1195, 163 L.Ed.2d 1053 (2006), *as recognized in Andrews–Willmann v. Paulson,* 287 Fed.Appx. 741, 746 (11th Cir.2008)). Whereas failure-to-hire claims do not require a "backward-looking examination" involving "consideration of numerous facts concerning [the plaintiff's] employment relationship and performance," retaliation claims do. *Id.* at *2 (quoting *Hobley v. Ky. Fried Chicken, Inc.,* No 04–7202, 2005 WL 3838163, at *1 (D.C.Cir. Dec. 22, 2005)). The court also emphasized that the positions Neely applied for were different from his previous one with Bechtel. *Id.* at *3. Examining why he was not hired for any of the new jobs thus would not require extensive review of the details of his earlier employment with the company. *Id.*

In her Response brief, Ms. King implies that her retaliation claims against Cintas are essentially similar to the failure-to-hire claims asserted by Neely against Bechtel. (*See* Doc. 9 at 4). As Cintas shows in its Reply brief, this is not accurate. (*See* Doc. 10 at 4–5). Ms. King is advancing strictly *retaliatory* failure to re-hire claims.[1] She certainly is not claiming, as Neely was, that Cintas declined to hire her based on any immutable characteristic, such as race,

---

1. Several circuit courts have recognized a "retaliatory failure-to-rehire" claim. *See, e.g., Calero–Cerezo v. U.S. Dep't of Justice,* 355 F.3d 6, 25 (1st Cir.2004) (setting out the elements of such a claim under Title VII: (1) the plaintiff engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal connection existed between her protected activity and the adverse employment action); *Velez v. Janssen Ortho, LLC,* 467 F.3d 802, 803 (1st Cir.2006) (explicating as an issue of first impression that, for such a claim, "the establishment of an 'adverse employment action' requires a showing that (1) she ap-

plied for a particular position (2) which was vacant and (3) for which she was qualified ... [and] not hired."); *Cichon v. Exelon Generation Co.,* 401 F.3d 803, 812 (7th Cir.2005) (FLSA retaliatory failure-to-rehire elements); *Morgan v. Fed. Home Loan Mort. Corp.,* 328 F.3d 647, 651 (D.C.Cir.2003) (Title VII retaliatory failure-to-rehire elements set out); *Ruggles v. Cal. Polytechnic State Univ.,* 797 F.2d 782, 786 (9th Cir.1986) (same). The parties have not pointed out to the court, and the court has not independently located, any Eleventh Circuit opinion addressing this issue.

gender, or national origin. According to her Complaint, Cintas violated Title VII by failing to hire her because of her prior opposition to gender discrimination. (Doc. 1 ¶¶ 42–43). Although the Complaint lacks any allegation that Cintas failed to hire her in retaliation for her having requested leave under the FMLA, Cintas has not filed an answer to the Complaint, nor has it moved for summary judgment. Therefore, Ms. King has the right to amend her complaint without leave of court[2], and, accordingly, for purposes of this Motion, the court will consider Ms. King's Complaint as though it contained such an allegation.

Ms. King's retaliatory failure to hire claims fall squarely under the arbitration clause. That clause committed both parties to arbitration regarding "rights or claims *arising out of or in any way related to* Employee's employment with Employer." (Doc. 7 at 4–5) (emphasis added). Ms. King's retaliatory failure to hire claims plainly "arise out of" her past employment with Cintas, as proving a causal link between her protected conduct and the decision not to hire her necessarily "relates" that decision to the reasons she was terminated. *Telecom Italia*, 248 F.3d at 1116. Evaluating these claims will require an extensive "backward-looking examination" into her conduct as a Cintas employee, the nature of her exchanges with her superiors, and the consequences of these interactions. *Neely*, 2008 WL 2120085, at *2.

## IV. Order

For these reasons, the Motion to Compel Arbitration is **GRANTED**. The parties are **ORDERED** to arbitrate all claims asserted in this action in accordance with the Employment Agreement formed between them on May 27, 2010. Pending arbitration, the action is **STAYED**.

2. *See* Fed R.Civ.P. 15(a)(1).

Finally, the Clerk of Court is **DIRECTED** to administratively close this case.